**SHAWMUT BOSTON INTERNATIONAL BANKING CORPORATION, et al., Plaintiffs-Appellees,**

v.

**Luis DUQUE–PENA, Defendant-Appellant.**

No. 84–5618.

United States Court of Appeals, Eleventh Circuit.

Aug. 12, 1985.

George Volsky, Miami, Fla., for defendant-appellant.

Michael L. Rosen, Holland & Knight, Julian Clarkson, Tallahassee, Fla., for plaintiffs-appellees.

Before TJOFLAT and HENDERSON, Circuit Judges, and NICHOLS *, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

This is an appeal from the entry of a default judgment in the United States District Court for the Southern District of Florida pursuant to Rule 37, Fed.R.Civ.P. Finding no abuse of discretion by the district court in taking such action, we affirm.

In the latter part of 1982, Shawmut Boston International Banking Corporation (Shawmut) and several other banks entered into a credit and loan agreement with General Coffee Corporation (GCC), a company controlled by Alberto Duque-Rodriguez, the son of the appellant, Luis Duque-Pena. By May, 1983, GCC had become in arrears on loans extended pursuant to the agreement. At that time, to induce Shawmut and the other banks not to hold GCC in default on upwards of $30,000,000.00 in loans, Duque-Pena became an unconditional guarantor of GCC's obligation. The guaranty expressly provided that, in the event of a suit, Duque-Pena consented to personal jurisdiction in any United States court. R.Ex. 15. GCC fell into default again, however, and Shawmut filed this action against Duque-Pena on June 3, 1983, seeking approximately $30,000,000.00 plus interest, costs and attorneys fees.

On June 23, 1983, Duque-Pena filed a motion for an extension of time to answer the complaint. He also filed a motion to dismiss for lack of personal jurisdiction based on largely frivolous grounds. Following a hearing on Duque-Pena's motion to dismiss, the district court directed the continuation of discovery. The court explained it would rule on the motion after the completion of discovery. At this point, Duque-Pena's counsel withdrew from the case. On December 16, 1983, new counsel filed a motion seeking to have discovery limited to jurisdictional facts. He also sought to limit discovery to interrogatories on the unsubstantiated ground that Shawmut's deposing Duque-Pena in Bogota, Colombia (his place of residence) would be unduly burdensome to him. On December 21, 1983, and after a hearing, the district court ruled that (1) a protective order would be granted with respect to certain documents, (2) a deposition of Duque-Pena should be taken after 60 days and (3) Duque-Pena should file an answer to the com-

---

* Honorable Philip Nichols, Jr., U.S. Circuit Judge for the Federal Circuit, sitting by designation.

plaint within 60 days. The district court made no dispositive ruling on the motion to dismiss.

On the 60th day following this order, Duque-Pena filed an answer that reasserted all the arguments made in his motion to dismiss. Duque-Pena resisted the taking of his deposition, apparently by refusing to pick a day of the month of April in which he could be deposed in Bogota. His second set of lawyers then withdrew on the ground of "irreconcilable differences." The district court granted the motion to withdraw on April 10, 1984, but expressly ordered Duque-Pena to obtain new counsel within 10 days and to comply with all pending discovery. On April 11, 1984 Shawmut renoticed the deposition in Bogota and made all necessary preparations.

On April 17, 1984, Duque-Pena initiated a letter writing campaign directed to the district court. R.Ex. pp. 59–73. In addition to realleging the arguments made in his motion to dismiss and his answer, Duque-Pena asserted that his membership in the Congress of Colombia entitled him to immunity from such examination. He cited Colombian penal law as support thereof. He also claimed that it was impossible for him to be present in Bogota during the dates set for his deposition. Finally, in an April 28, 1984 letter Duque-Pena repeated these assertions, added further citations to Colombian law and proclaimed himself too poor to pay an attorney. He requested that the district court appoint an attorney for him. His April 28, 1984 letter ignored yet another notice of deposition (for early May) that Shawmut had sent after Duque-Pena's first letter.

On May 8, 1984, Shawmut again renoticed his deposition, for May 18, 1984. Three days later, Duque-Pena wrote to the district court, acknowledging receipt of the notices but reasserting his frivolous arguments. He flatly stated that under Colombian law the district court was powerless to order such a proceeding. R.Ex. 70–71. He did not appear for the May 18, 1984 deposition.

At a June 4, 1984 discovery conference which Duque-Pena did not attend, the district court granted Shawmut's motions filed pursuant to Fed.R.Civ.P. Rule 37 on May 22, 1984, and ruled that (1) Shawmut had ten days to respond to appellant's letters, (2) discovery should be completed within 30 days, (3) trial should begin on August 20, 1984 and (4) the deposition of Duque-Pena should be taken on June 18, 1984 at a time and place duly noticed by Shawmut. On June 8, 1984 Shawmut renoticed the deposition for Miami.

On June 7, 1984, Duque-Pena wrote again to the district court. On June 14, 1984 Shawmut filed a response to Duque-Pena's letters. On June 18, 1984, the date of his deposition, Duque-Pena wrote to tell the court "why I am not going to appear for the Judicial Proceeding which I have been been notified." R.Ex. 88. His signed letter, typed in English, complained that all litigation documents were faulty because they were in English.

On June 19, 1984, the district court treated Duque-Pena's letters as renewals of his motions for dismissal and for a protective order. The district court declined to grant these renewed motions. Shawmut again moved for sanctions under Rule 37.

On July 8, 1984, the district court granted Shawmut's motion for Rule 37 sanctions and cited to Duque-Pena's reargument of decided issues and his disobedience of a direct court order to take his deposition. The court held him in contempt, conclusively presumed personal jurisdiction over him and granted a default judgment, plus costs and attorneys fees, to Shawmut.

■ In conclusively presuming personal jurisdiction, the district court did not, as the facts above clearly demonstrate, abuse its discretion. In *Insurance Corp. of Ireland Ltd. v. Compagnie de Bauxites*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), the Supreme Court approved a district court's assertion of personal jurisdiction after the defendant had been warned to present evidence showing otherwise on penalty of a conclusive presumption of jurisdiction. When the defendant failed to

comply despite that warning, the district court was justified in taking such action. Duque-Pena now claims that *Bauxites* forbids such sanctions without prior warning. But the Court there expressly noted that assertion of jurisdiction over a defendant would also be proper where "parties to a contract ... agree in advance to the jurisdiction of a given court." 456 U.S. at 704, 102 S.Ct. at 2105, 72 L.Ed.2d at 502. Duque-Pena expressly submitted himself to the personal jurisdiction of the United States courts. Because he waived his due process right not to be subjected to suit in a forum without sufficient contacts, Duque-Pena cannot now claim, as did the defendant in *Bauxites,* that the Rule 37 sanction deprived him of any due process interest. The district court could not possibly have deprived Duque-Pena of what he had long since abandoned. Therefore, Duque-Pena cannot now assert a *Bauxites* due process claim as a matter of law.

■ *Bauxites* indicates that Rule 37 now embodies the due process limitations delineated in the Court's longstanding opinion, *Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909). Compliance with Rule 37 is compliance with due process. *Bauxites,* 456 U.S. at 705, 102 S.Ct. at 2106, 72 L.Ed.2d at 503. Rule 37(d) permits the imposition of such sanctions "as are just." Default judgment, attorneys fees and costs are specifically authorized. Rule 37(b), (d). The pattern of Duque-Pena's bad faith efforts to delay a valid collection suit justified the sanctions of a default judgment, fees and costs. Moreover, he disobeyed a direct court order even though he acknowledged it as such, and he asserted unreliable grounds for the purpose of further delaying the suit. Although a Rule 37 dismissal (and by analogy, default) "will not be upheld if a party's failure to comply is due to inability rather than to willfulness, bad faith or disregard of responsibilities," *Aztec Steel Corp. v. Florida Steel Corp.,* 691 F.2d 480, 481 (11th Cir.1982), Duque-Pena made no showing of inability to appear for the numerous depositions noticed by Shawmut. He seems to claim that it is Shawmut's burden to demonstrate willfulness. Such reasoning is specious considering the fact that Shawmut cannot obtain direct proof of willfulness without Duque-Pena's deposition. In any case, his flouting of the district court's authority and Shawmut's right to depose him furnished adequate proof that he acted willfully, and the district court was authorized to find that his behavior did not result from an inability to comply with notices to depose and with court orders.

■ Finally, Duque-Pena's attempt to come within the protection of *Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) must also fail, even if, as he claims, he is entitled to immunity under Colombian law. In *Rogers,* the Supreme Court reversed a Rule 37 dismissal where the plaintiff had failed to produce records of a Swiss bank despite the defendant's motion to produce them. The district court there found that the plaintiff had made good faith efforts to obtain the bank records but was prevented from doing so because the Swiss government, acting pursuant to its bank secrecy laws, had seized the records. Had the plaintiff obtained the records and turned them over, it would have been subject to criminal prosecution under the secrecy laws. Based on this finding of the district court, the Court held that the plaintiff did not willfully refuse to produce but was simply unable to comply with the demand of the motion.

Assuming that under Colombian law Duque-Pena was privileged against such a personal examination, he makes no claim that he would be punished for voluntarily giving his deposition. He simply alleges his immunity. *Rogers* dealt with the penalties that a foreign country could impose on a cooperative party, not on the privileges against discovery that foreign law might provide a recalcitrant witness. Thus, Duque-Pena has failed to show that his noncompliance resulted from his inability rather than his own willful conduct.

The district court's judgment is AFFIRMED.