**ALEXANDER PROUDFOOT COMPANY WORLD HEADQUARTERS L.P. and APCO, Inc., Plaintiffs–Appellants,**

v.

**Dennis C. THAYER, Defendant–Appellee.**

**No. 88–5701.**

United States Court of Appeals, Eleventh Circuit.

July 19, 1989.

---

George Roberts, Roberts & Reynolds, West Palm Beach, Fla., Edward B. Krugman, Bondurant, Mixson & Elmore, Michael B. Terry, Emmet J. Bondurant, Atlanta, Ga., for plaintiffs-appellants.

Michael R. Alford, Holland & Knight, Marty Steinberg, Miami, Fla., for defendant-appellee.

Before VANCE and COX, Circuit Judges, and KING[1], Chief District Judge.

1. Honorable James Lawrence King, Chief U.S. District Judge for the Southern District of Flor- ida, sitting by designation.

**914**

JAMES LAWRENCE KING, Chief District Judge:

On the footheels of *Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir.1987), *aff'd*, — U.S. —, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), we return to the "Irrepressible Myth of *Erie* [2]" in the forum selection clause context. We now are faced with a forum selection clause wherein the parties specifically consent to personal jurisdiction in Florida.

The district court found this contractual clause insufficient to confer *in personam* jurisdiction under the law of the forum state, Florida. The trial court then granted a motion to dismiss for lack of personal jurisdiction, finding that the requirements of the Florida Long–Arm Statute, Fla.Stat. Ann. § 48.193 (West 1969 and Cumm.Ann. Supp.1989) were not satisfied. The appellant now challenges this ruling by arguing that the *Erie* doctrine required the district court to apply federal law to enforce the personal jurisdiction conferral clause. Although this argument is not persuasive, we reverse and remand because we find that Florida confers jurisdiction over the appellee.

### BACKGROUND [3]

Alexander Proudfoot Company World Headquarters and APCO, Inc. ("Proudfoot") filed this action to enforce certain provisions of its employment agreement with Dennis C. Thayer ("Thayer"). Proudfoot seeks to enjoin Thayer from competing with Proudfoot, from servicing its clients, and from using confidential information belonging to Proudfoot. Proudfoot also demands that Thayer return to Proudfoot all confidential documents that Thayer retained after his employment terminated.

Proudfoot is a Delaware corporation with its principal offices in Palm Beach County, Florida. Proudfoot is engaged in the business of management consulting. Specifically, Proudfoot designs and installs management and operational skills systems which help businesses increase productivity. Proudfoot maintains that these specially developed systems are confidential information and are Proudfoot's exclusive property.

Proudfoot first employed Thayer in 1973 to assist in the design and installation of the management systems.[4] Proudfoot trained Thayer in the various aspects of the consulting business, including the design and installation of management and operational skills systems. Thayer's first position with Proudfoot was as a staff technician in the operations side of the business. At all relevant times, Thayer remained in operations, receiving promotions to installation manager, chief of operations, executive chief of operations, and later director.

The employment agreement at issue is dated January 15, 1987. Proudfoot mailed a copy of the agreement to Thayer's residence in Missouri. Thayer read the agreement and then authorized his wife to sign it for him. Mrs. Thayer then returned the agreement by mail to Proudfoot's offices in Palm Beach County, Florida, where Proudfoot's general manager executed the contract.

The terms of the employment agreement are central to the resolution of this appeal. The agreement prohibits Thayer from accepting employment with a competitor of Proudfoot for two years after the termination of his employment. The agreement also forbids Thayer from using Proudfoot's confidential information. The agreement further provides that upon disassociation, Thayer must return to Proudfoot in Florida

---

2. *See* Ely, *The Irrepressible Myth of Erie*, 87 Harv.L.Rev. 693 (1974).

3. The information contained in this section is derived from the materials before the district court when it held a hearing on the motion to dismiss.

4. When Thayer began to work for Proudfoot, Proudfoot was an Illinois general partnership based in Chicago. Between 1975 and 1985,

Thayer was assigned overseas to two of Proudfoot's affiliated companies, first in Brazil and later in Europe. While Thayer was abroad, Proudfoot moved its principal offices from Illinois to Florida. At this time, Thayer executed and accepted the terms of an employment agreement. This agreement included a covenant not to compete and a covenant not to disclose or use confidential information.

all documents and other information in his possession concerning Proudfoot's business or belonging to Proudfoot. In addition, the employment agreement specifically provides that Thayer consents to personal jurisdiction within the state of Florida for any suit arising from a violation of the agreement.[5] By executing the agreement, Thayer also apparently agreed that the proper venue for any suit arising out of the agreement would be a Florida court.[6]

Most of Thayer's contacts with Proudfoot prior to the alleged breach of this employment contract were centered in Palm Beach County, Florida. Proudfoot reassigned Thayer to United States operations in April of 1985. Thayer reported, either by mail or telephone, to his Proudfoot superiors at least on a weekly basis, and sometimes more frequently.[7] During 1986 and 1987, Thayer traveled into Florida on at least nine occasions. On a majority of these trips, Thayer engaged in internal Proudfoot administrative matters at Proudfoot's office. On approximately thirty percent of these trips, however, Thayer performed work on behalf of the Proudfoot clients he represented. These clients were not Florida companies, but out-of-state interests who had matters in Florida to which Thayer attended.

Thayer had additional, more minor contacts with Florida. Proudfoot's procedures required him to submit travel vouchers to Proudfoot's offices in Palm Beach County, Florida, on a biweekly basis. This submission procedure was the exclusive method for Thayer to obtain reimbursement for his business travel expenses incurred on behalf of Proudfoot. Proudfoot's travel agency in Florida arranged and paid for all of Thayer's airline tickets used for business travel. Proudfoot also paid the required unemployment and workers' compensation benefits for Thayer.

In May of 1987, Thayer voluntarily resigned from his employment with Proudfoot. Shortly after resigning, Thayer contacted the Institute of Management Resources ("IMR"), a competitor of Proudfoot based in California, concerning possible employment. Thayer began work for IMR in June of 1987, and performed work similar to that which he had performed at Proudfoot.

Proudfoot believed that Thayer's new employment was in violation of the non-competition covenants in Thayer's employment agreement. Proudfoot also thought that Thayer violated his employment agreement by disclosing or using Proudfoot's confidential information in his employment with IMR. Proudfoot demanded that Thayer return all of Proudfoot's information he had within his possession. When Thayer refused to return this information, Proudfoot filed suit in state court.[8]

---

5. The specific contractual language reads as follows:

> 10. *The company's remedies.* Employee acknowledges that any violation of this agreement may subject employee to liability for damages, and also to court enforcement on the specific terms of its provisions. Employee further acknowledges that it may be difficult for the company to ascertain the exact amount of damages for violation of these provisions but that the company's damages would be continuing in nature, and that the company will suffer irreparable harm and injury by reason of any such violations. Consequently, employee consents to court enforcement of the specific language of this agreement, and further consents to be personally subject to the jurisdiction of the federal or state courts located in the state of Florida in any suit against employee by the company for violation of this agreement.

6. The specific contractual language provides as follows:

15. *Governing Law:* Notwithstanding principles of conflicts of laws of any jurisdiction to the contrary, all terms and provisions of this agreement are to be construed and governed by the laws of the state of Florida without regard to the laws of any other jurisdiction wherein employee resides or performs any duties hereunder or wherein any violation of this agreement occurs. Any suit, action or other legal proceeding arising out of or relating to this agreement will be brought exclusively in the federal and state courts located in the state of Florida.

7. Proudfoot's company procedures required these frequent communications.

8. Thayer stated at his deposition that he could not return this information because the information consisted largely of documents that Thayer destroyed or threw away.

Thayer removed the case to federal court[9] and moved to dismiss for lack of personal jurisdiction. Thayer argued that the requirements of Florida's long-arm statute had not been satisfied. Proudfoot opposed the motion by contending that Thayer waived any jurisdictional objections he may have had by consenting to jurisdiction in Florida in the employment agreement.

After considering the argument of counsel, the district court granted the motion to dismiss. The district court both refused to enforce the conferral of personal jurisdiction clause and found that the requirements of Florida's long-arm statute were not satisfied.

### DISCUSSION

The appellant argues that the district court improperly applied state law to decide the motion to dismiss. Proudfoot maintains that *Erie R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires the application of federal law to enforce the conferral of personal jurisdiction clause. We do not agree, but reverse and remand because under the circumstances of this case, Thayer is subject to jurisdiction in Florida.

### I. STANDARD OF REVIEW

We review the dismissal of an action for lack of personal jurisdiction under the nondeferential *de novo* standard. *See Ten Mile Industrial Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1524 (10th Cir.1987); *Dandlea v. Malsbary Mfg. Co.*, 839 F.2d 163, 166 (3d Cir.1988). The determination of personal jurisdiction involves an application of the law to the facts as set forth in the affidavits and complaint. *Ten Mile Industrial Park*, 810 F.2d at 1524. The appellate court, in reviewing the documentary evidence presented, is in as

good a position as the district court to determine the existence of personal jurisdiction. *Id.* Our review, therefore, is plenary.

### II. THE APPLICATION OF THE *ERIE* DOCTRINE

We start our *de novo* review with the *Erie* doctrine. Almost every time a federal court sitting in diversity decides a matter, *Erie* concerns are implicated. In today's world of well-developed federal and state law, both state and federal law often provide a means to resolve a legal issue in dispute. Consistent with the principles the Supreme Court espoused in *Erie*, a federal court must determine whether to apply federal or state law to settle the disputed issue. The question of which law to apply is a "sticky" one, *see Stewart Org., Inc. v. Ricoh Corp.*, 779 F.2d 643, 645 (11th Cir.), *vacated*, 785 F.2d 896 (11th Cir.1986), and is best understood by examining *Erie* and its progeny.

*Erie* eliminated the existence of independent federal common law in diversity cases by overruling *Swift v. Tyson*, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842). The Court denounced *Swift* as an improper assumption by the federal courts of a power "to declare rules of decision which Congress was confessedly without power to enact as statutes." *Erie*, 304 U.S. at 72, 58 S.Ct. at 819. Justice Brandeis believed the principles espoused in *Swift* "invaded" rights the Constitution reserved for the several states. *Id.* at 80, 58 S.Ct. at 823. Moreover, the Court was concerned that *Swift* allowed forum shopping. *Id.* at 75, 58 S.Ct. at 820. By deciding that a federal court sitting in diversity must apply the law of the state in which it sits, the Court in *Erie* primarily sought to discourage forum shopping by having federal decisions mirror those of a court in the forum state.

---

**9.** At oral argument, the appellant noted that the petition for removal was jurisdictionally defective. Specifically, the appellee did not describe the citizenship of each of the limited partners of Proudfoot. The allegation of citizenship of the limited partners is critical in a diversity case because partnerships are deemed citizens of all states in which the limited partners are citizens.

*See, e.g., Elston Investment, Ltd. v. David Altman Leasing Corp.*, 731 F.2d 436 (7th Cir.1984). We afforded the appellee an opportunity to amend his removal petition. The appellee subsequently filed an amended petition correcting the deficiency, so this court properly has jurisdiction to reach the merits of this appeal.

After almost three decades and many decisions analyzing *Erie*,[10] the Supreme Court attempted to formulate a final, feasible test in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). *Hanna* and its progeny provide the current methodology to determine whether to apply federal or state law where the two seemingly conflict.

■ Under the *Hanna* approach, when the federal law sought to be applied is a congressional statute or Federal Rule of Civil Procedure, the district court must first decide whether the statute is "sufficiently broad to control the issue before the court." *Hanna*, 380 U.S. at 471, 85 S.Ct. at 1144 (1965); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–750, 100 S.Ct. 1978, 1984–1985, 64 L.Ed.2d 659 (1980); *Burlington Northern R. Co. v. Woods*, 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987). In making this determination, the district judge engaged in straightforward statutory interpretation to determine whether the statute covers the disputed issue. *See Stewart Org.*, 108 S.Ct. at 2242 (citing *Walker v. Armco Steel Corp.*, 446 U.S. at 750 and n. 9, 100 S.Ct. at 1985 and n. 9; *Burlington Northern R. Co. v. Woods*, 107 S.Ct. at 971). If the federal statute covers the point in dispute, the district court proceeds to inquire whether the statute represents a valid exercise of Congress' authority under the Constitution. *See Hanna*, 380 U.S. at 471, 85 S.Ct. at 1144.[11] "If Congress intended to reach the issue before the District Court, and if it enacted its intention into law in a manner that abides by the Constitution, that is the end of the matter." *Stewart Org.*, 108 S.Ct. at 2242. " 'Federal courts are bound to apply rules enacted by Congress with respect to matters ... over which it has legislative pow-

ers.' " *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)).

■ If a federal statute or Rule of Civil Procedure does *not* sufficiently cover the disputed issue, *Hanna* requires that the district court consider the applicability of federal judge-made law. This analysis requires the court to evaluate whether application of federal judge-made law would disserve the "twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of the laws." *Stewart Org.*, 108 U.S. at 2243 n. 6 (citing *Hanna*, 380 U.S. at 468, 85 S.Ct. at 1142). If applying the relevant judge-made law would denigrate these policies, the district court should apply state law. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 752–753, 100 S.Ct. 1978, 1986, 64 L.Ed. 2d 659 (1980).

■ With this background, we now conduct the *Hanna* inquiry. The first step is to precisely define the issue. *See Stewart Org.*, 108 S.Ct. at 2243. The simple issue before this court is whether the district court properly granted a motion to dismiss for a lack of personal jurisdiction. The central focus of the analysis, however, must be the effect of the personal jurisdiction conferral clause. Accordingly, the specific issue presented is whether a federal court sitting in diversity should apply state or federal law to determine the effect of a contractual provision conferring personal jurisdiction on a motion to dismiss for lack of personal jurisdiction.

The first inquiry under *Hanna* is whether a federal statute or Federal Rule of Civil Procedure sufficiently covers the disputed issued. Federal courts have consistently held that no federal statute or Rule of Civil

---

10. *See, e.g., Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Byrd v. Blue Ridge Rural Electric Cooperative,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

11. *Hanna* also outlined an additional inquiry where the applicability of a Federal Rule of Civil Procedure is in question. Federal rules must be measured against the statutory requirement of the Rules Enabling Act, 28 U.S.C.

§ 2072 (1982). The court must determine whether the Federal Rule of Civil Procedure "abridges, enlarges, or modifies any substantive right." This analysis actually determines the scope of the Enabling Act. *Hanna,* 380 U.S. at 471, 85 S.Ct. at 1144. In the case of a Federal Rule of Civil Procedure, therefore, a Federal Rule controlling the dispute must be applied unless the Rule transgresses the Enabling Act or the Constitution.

Procedure controls issues of personal jurisdiction. In *Arrowsmith v. United Press International*, 320 F.2d 219, 225–227 (2d Cir.1963) (en banc), Judge Friendly conducted an exhaustive study of all possible federal statutes or Rules that may cover issues of personal jurisdiction in diversity cases. He concluded that "no federal statute or Rule of Civil Procedure speaks to the issue either expressly or by fair implication." *Id.* at 225. Similarly, the Ninth Circuit recently found that, in a motion-to-dismiss context, no federal statute or Rule of Civil Procedure controlled the issue. *See Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir.1988). Unlike *Stewart Org.*'s transfer of venue, *Manetti–Farrow* involved a forum selection clause and a motion to dismiss. *Id.* at 510. Again, the court found that no federal statute or Rule determined the effect of a forum selection clause on the adjudication of a motion to dismiss. *Id.* at 512 n. 2. Because no federal statute or Rule is directly on point,[12] the court now must engage in the second inquiry under *Hanna*.

After determining that no federal statute or Rule of Civil Procedure sufficiently covers the issue in dispute, the court now considers the relevant federal judge-made law. According to *Hanna*, if the application of federal judge-made law would encourage forum shopping and promote the inequitable administration of the laws, then the court must apply state law. Necessarily, this analysis requires the court to determine the scope of the federal judge-made law sought to be applied before deciding whether applying that law would disserve the "twin aims of *Erie*."

Proudfoot urges that federal judge-made law in this case requires the enforcement of the personal jurisdiction conferral clause for two reasons. First, Proudfoot maintains that the Supreme Court's opinion in *The Bremen v. Zapata Off–Shore Company*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), finding a forum selection clause enforceable under federal admiralty law, is binding here. Second, Proudfoot suggests that after *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), a conferral of personal jurisdiction clause acts as a waiver of the defendant's constitutional due process rights and thus is properly enforceable.

This aspect of federal common law, favoring the enforcement of conferral of personal jurisdiction clauses, differs sharply from Florida law. In Florida, conferral of personal jurisdiction clauses are not enforced unless an independent ground for personal jurisdiction exists under the Florida Long Arm Statute, Fla.Stat.Ann. § 48.193 (West 1969 and Cumm.Ann.Supp. 1989). *See McRae v. J.D./M.D., Inc.*, 511 So.2d 540 (Fla.1987).

With this understanding of the significant difference between the relevant federal and state laws, the court can evaluate the federal judge-made law in light of the twin aims of *Erie*. The first concern, forum shopping, requires the court to ask whether applying the state rule "would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court." *Hanna*, 380 U.S. at 468 n. 9, 85 S.Ct. at 1142 n. 9. A diverse plaintiff suing a defendant without any contacts in the forum state, but who has signed a conferral of personal jurisdiction clause, may file suit in federal or state court. A federal court would enforce the conferral of personal jurisdiction clause under federal law, and the action would proceed. The plaintiff suing the same defendant in state court would face dismissal for lack of personal jurisdiction, the contractual clause notwithstanding. This difference in outcomes indicates that a plaintiff with a choice of forum would file in federal court to escape the

---

12. This lack of controlling federal law or Rule distinguishes the present case from *Stewart Org. Stewart Org.*'s forum selection clause concerned venue, so the Supreme Court found 28 U.S.C. § 1404 as sufficiently broad to cover the issue. The "forum selection clause" in the present case involves personal jurisdiction. The conferral of personal jurisdiction clause is not sufficiently covered by § 1404 nor, as the discussion in the text indicates, by any other federal statute or Rule. The court, consequently, must proceed with the remainder of the *Hanna* inquiry.

effect of the state law.[13] Accordingly, the application of federal judge-made law would disserve the first aim of *Erie.*

The court also must consider the related second aim of *Erie,*[14] the avoidance of the inequitable administration of the laws. To analyze the second aim, the court asks whether the state law is "so important to the litigation that failure to enforce it would unfairly discriminate against citizens of the forum state." *Hanna,* 380 U.S. at 468 n. 9, 85 S.Ct. at 1142 n. 9.[15] The validity of a clause conferring personal jurisdiction is one of great importance to the litigation. When a defendant without any contacts in Florida is sued in Florida, an action brought in state court would be dismissed for lack of jurisdiction despite the conferral of jurisdiction clause. Conversely, the same action brought in federal court could proceed to judgment because of the contractual agreement to *in personam* jurisdiction. The citizens of the forum state are unfairly discriminated against in this situation because an action that would be barred in state court can proceed to judgment in federal court "solely because of the fortuity that there is diversity of citizenship between the litigants." *Walker v. Armco Steel Corp.,* 446 U.S. 740, 753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980). Accordingly, the use of federal judge-made law in the present case would further the inequitable administration of the laws.

Because the application of federal judge-made law here would encourage forum shopping and promote the inequitable administration of the laws, we must apply state law to decide the issue presented.

We now examine the relevant issues of Florida law.

## III. THE APPLICATION OF FLORIDA LAW

To assert personal jurisdiction over a nonresident defendant, federal courts must engage in a two-part analysis. *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1521 (11th Cir.1985); *Ford Motor Co. v. Atwood Vacuum Machine Co.,* 392 So.2d 1305, 1308 (Fla.) *cert. denied* 452 U.S. 901, 101 S.Ct. 3024, 69 L.Ed.2d 401 (1981). Courts first analyze the jurisdictional problem by looking at the applicable state long-arm statute. *Pesaplastic,* 750 F.2d at 1521. If this inquiry is satisfactorily answered, the court considers whether asserting jurisdiction offends the due process clause of the fourteenth amendment. *Id.* at 1521. Specifically, the court decides whether the nonresident defendant has such minimum contacts with Florida that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). The court now considers each of these issues in turn.

Under Florida law, clauses conferring personal jurisdiction are insufficient to establish *in personam* jurisdiction, absent an independent basis for jurisdiction under the long-arm statute. *See McRae v. J.D./M.D., Inc.,* 511 So.2d 540 (Fla.1987). In *McRae,* the plaintiff attempted to assert personal

---

**13.** Other courts have defined forum shopping as "the unfairness of giving one set of plaintiffs (those who can sue in federal court) some particular advantage unavailable to non-diverse plaintiffs who must proceed in state court." *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1157 (5th Cir.1987). Forum shopping also exists in the present case under this definition. Plaintiffs who could sue in federal court would have the unfair advantage of federal law upholding their claim, while plaintiffs who must proceed in state court would have their case dismissed.

**14.** After *Walker v. Armco Steel Corp.,* 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980), perhaps the court need only analyze whether appli-

cation of federal law would disserve *either* aim of *Erie. Id.* at 753, 100 S.Ct. at 1986. ("It is sufficient to note that although in this case failure to apply the state service law might not create any problem of forum shopping, the result would be an 'inequitable administration' of the law."); *see also Stewart Org.,* 108 S.Ct. at 2249 (Scalia, J. dissenting).

**15.** The Fifth Circuit has defined the second aim of *Erie* as "the federal courts' own interests in equitable self-administration." *In re Air Crash Disaster,* 821 F.2d at 1157. Judge Higginbotham's concurrence in that case fully details the problems with this approach, so the court will engage in the standard analysis.

jurisdiction over an objecting nonresident defendant who did not have *any* contacts with Florida, but who executed a contract that provided Florida law would apply and venue would be in Florida.[16] The court viewed the clause merely as an "attempt to establish personal jurisdiction in the first instance over an objecting defendant who has done none of the acts set forth in [the long-arm statute]." *Id.* at 543. The Florida Supreme Court, therefore, declared that the contractual clause by itself was insufficient to establish *in personam* jurisdiction over a nonresident defendant. *Id.*

After *McRae*, Florida courts will not exercise jurisdiction solely on the basis of a contractual provision conferring jurisdiction if the nonresident defendant's acts do not satisfy the state long-arm statute. Accordingly, this court cannot merely rely on the contract Thayer signed that conferred personal jurisdiction and indicated venue, but instead must decide whether Florida can properly assert personal jurisdiction under the long-arm statute.

■ Among the several listed bases, the Florida long-arm statute allows Florida courts to assert jurisdiction over nonresident defendants who breach a contract by failing to perform acts in Florida as required by the contract.[17] *Fla.Stat.*

§ 48.193(1)(g). Proudfoot contends that this section of the long-arm statute is satisfied because Thayer breached the employment agreement by failing to turn over confidential information to Proudfoot in Florida as required by the contract.[18] We agree.

Paragraph 5 of the Employment Agreement between Proudfoot and Thayer specifically provides that Thayer, upon termination of employment, shall deliver to Proudfoot all confidential materials. Thayer, however, destroyed or threw away all documents or materials containing classified information. Thayer's failure to return these materials to Proudfoot in Florida constitutes a breach of a contract in Florida and thus Thayer falls within the purview of the long-arm statute. *See Thompson v. King*, 523 F.Supp. 180, 183 (M.D.Fla.1981) (failure to pay $40,000 in Florida as required by contract is sufficient basis to establish jurisdiction under long-arm statute); *Gilbert v. Herne*, 544 So.2d 226, 14 Fla.L.Weekly 846 (Fla. 3d DCA 1989) (nonresident defendant's failure to send contractually promised payments to Florida satisfies long-arm statute); *Harris v. Caribank*, 536 So.2d 394 (Fla. 4th DCA 1989) (long-arm statute satisfied where defendant failed to make payments in Florida as required by contract).[19]

---

16. The contract contained the following clause: It is agreed that this agreement, wherever executed, shall be construed in accordance with the laws of the State of Florida and venue shall be in Palm Beach County, Florida.

17. The full text of the statute provides as follows:

    1. Any person, whether or not a citizen of resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submit himself, and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

        (g.) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

18. Proudfoot also presents other arguments under this subsection of the long-arm statute. Similarly, Proudfoot contends Thayer is subject to jurisdiction under the "doing business" section of the statute. Because we find that Thayer's nondelivery satisfies the long-arm statute,

the court need not address Proudfoot's other arguments.

19. Thayer suggests that the present case is controlled by *Vaughn v. AAA Employment, Inc.*, 511 So.2d 1045 (Fla.2d DCA 1987). *Vaughn* involved a partnership contract with a nonresident defendant that provided for profit sharing between the plaintiff and the nonresident defendant. The contract also stated that upon dissolution of the partnership, all books and records were to be "turned over" to the plaintiff. The contract, however, did not state that the payments were to be made in Florida nor did it state that the records were to be delivered to the plaintiff in Florida. Because neither clause mentioned Florida, the Florida appellate court properly concluded that the defendant did not breach a contract in Florida by failing to perform acts required in Florida. The contract in the present case requires delivery of the documents to the company in Florida. This critical factual distinction between the present case and *Vaughn* dissuades the court from following the holding in *Vaughn*.

After deciding that the long-arm statute provides a basis to assert personal jurisdiction over Thayer, the court must determine whether the due process clause allows Florida courts to establish *in personam* jurisdiction over the nonresident defendant. Normally, courts consider whether the defendant purposefully established "minimum contacts" with the forum state. *International Shoe v. Washington*, 326 U.S. at 316, 66 S.Ct. at 158. This analysis requires courts to determine whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hailed into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

▆▆▆ Because the nonresident defendant in the present case contractually agreed to personal jurisdiction in Florida, the usual due process analysis need not be done.[20] As the Supreme Court noted in *Burger King*, the due process analysis is unnecessary where a nonresident defendant has consented to suit in a forum. *Burger King*, 471 U.S. at 472, 473 n. 14, 105 S.Ct. at 2181, 2182 n. 14. Quite simply, "parties to a contract may agree in advance to submit to the jurisdiction of a given court." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704, 102 S.Ct. 2099, 2105, 72 L.Ed. 2d 492 (1982) (quoting *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964)); *see also Petrowski v. Hawkeye–Security Co.*, 350 U.S. 495, 76 S.Ct. 490, 100 L.Ed. 639 (1956). The enforcement of an agreement conferring jurisdiction does not offend due process where the provision is freely negotiated and not unreasonable or unjust. *See Burger King*, 471 U.S. at 472, 473 n. 14, 105 S.Ct. at 2181, 2182 n. 14; *see also The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32

L.Ed.2d 513 (1972); *Cf. Shawmut Boston Int'l Banking Corp. v. Duque–Pena*, 767 F.2d 1504, 1507 (11th Cir.1985). Thayer has not presented any evidence that the agreement was signed under duress or is unreasonable. Accordingly, having contractually waived his due process right not to be subjected to suit in a forum without sufficient contacts, Thayer cannot now assert that personal jurisdiction in Florida violates his due process rights.

### CONCLUSION

The court's concern with forum shopping and the avoidance of the inequitable administration of the laws requires that Florida law govern the application of clauses conferring personal jurisdiction. Accordingly, because jurisdiction over Thayer is proper under state law and the due process clause, the district court's dismissal based on lack of personal jurisdiction is reversed and the case remanded.

REVERSED and REMANDED.

---

**20.** In the absence of the contractual waiver, Proudfoot suggests that Florida courts could still properly assert jurisdiction over Thayer. The employment agreement that he breached was executed in Florida. His employment under the contract required fairly regular travel to Florida. Finally, his breach of the employment contract affected the employer in Florida.

Proudfoot contends that these factors indicate Thayer could have reasonably anticipated being haled into court in Florida. *See Burger King*, 471 U.S. 462, 105 S.Ct. 2174. Although these contacts may satisfy the due process clause, the court need not address this issue in light of the valid clause conferring personal jurisdiction.