M.G.J. INDUSTRIES, INC., a Florida Corporation, Marion C. Davis and Stella Davis, Individually, Plaintiffs,

v.

GREYHOUND FINANCIAL CORPORATION, INC., a Delaware Corporation, Defendant.

No. 92–911 Civ–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 14, 1992.

Bennie Lazzara, Jr., Lazzara, Caskey, Polli, Gillick & Paul, P.A., Tampa, Fla., for plaintiffs.

Donald Arthur Gifford, Shackleford, Farrior, Stallings & Evans, P.A., Tampa, Fla., David T. Maddox, Calvin, Dylewski, Gibbs, Maddox & Verner, Houston, Tex., for defendant.

ORDER ON MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause is before the court on Defendant's Motion to Dismiss, filed July 29, 1992, for improper venue and lack of per-

sonal jurisdiction, or in the alternative to transfer the case to the United States District Court for the District of Arizona.

Defendant, GREYHOUND FINANCIAL CORPORATION, is a Delaware Corporation, Plaintiff, M.G.J. INDUSTRIES, Inc. is a Florida Corporation, and Plaintiffs, Marion C. Davis and Stella Davis, are Florida residents. Plaintiff's complaint does not specifically set forth the grounds for personal jurisdiction over Defendant, but the issue has been argued by the parties in their respective motions.

█ A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the Plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1947), and all allegations in the complaint are assumed to be true. *Ralph v. City of Daytona Beach*, 471 So.2d 1 (Fla.1983).

The complaint, filed July 2, 1992, alleged that GFC committed fraud, fraud in the inducement, duress, breach of covenant of good faith and fair dealing, promissory and equitable estoppel, negligent misrepresentation and breach of fiduciary duty in connection with a loan transaction. The facts alleged by Plaintiff are as follows:

1. On September 24, 1990, Plaintiff Mr. Davis, President of Plaintiff Corporation, entered into an asset purchase agreement with several businesses which required Plaintiffs to make a nonrefundable deposit of seven hundred fifty thousand dollars ($750,000.00) which would be forfeited if the asset purchase did not close by the deadline. The Amendment to the Asset Purchase Agreement, executed October 24, 1990, set the deadline for the closing for February 2, 1991.

2. In order to complete the asset purchase, it was necessary for Plaintiffs to secure primary and secondary financing. Primary financing was secured through Sun Bank National Association of Orlando and secondary financing was secured through Defendant, GREYHOUND FINANCIAL CORPORATION, Inc.

3. Plaintiffs employed the services of a mortgage broker, William C. McClure, to assist him in financing the asset purchase because Mr. McClure specialized in obtaining nonpersonally guaranteed loans. Mr. Davis expressed that he did not want a loan which required a personal guaranty by him or his wife, or the pledge of any of their personal assets.

4. Mr. McClure specifically contacted Defendant because he had recently closed a nonpersonally guaranteed loan with Defendant; Mr. McClure directly dealt with Ms. Apker, Assistant Vice President of Defendant Corporation, who was the agent and representative. Mr. McClure informed Ms. Apker of the necessity to have the loan completed in sufficient time to close on the asset purchase by the deadline or else forfeit the deposit.

5. After receiving a proposal on October 24, 1990, which required a personal guarantee, Mr. McClure explained to Ms. Apker that Plaintiffs did not want a loan with a personal guaranty and that if this was Defendant's requirement, he would seek loans from other institutions.

6. On October 26, 1990, Ms. Apker assured Mr. McClure that a personal guaranty would not be required, and submitted another proposal which did not require Mr. Davis to personally guaranty the loan.

7. Based on this assurance, Mr. Davis signed the Loan Proposal Agreement and paid Defendant twenty thousand dollars ($20,000) as a deposit for the loan. Ms. Apker made an oral promise that the final commitment letter would be issued by Thanksgiving 1990.

8. Ms. Apker took a poll of the committee voting on the loan; she stated that the poll revealed that approval of the loan would be granted.

9. The Final Commitment Letter was not submitted until December. On December 21, 1990, Defendant orally informed Plaintiffs that it would not approve the

loan to Plaintiffs without a personal guarantee from Mr. Davis, that Plaintiffs would be required to pledge stock, and that there would be no reduction in the cost of the loan.

10. On December 28, 1990, Plaintiffs received Defendant's draft of the Final Commitment Letter with a requirement that Mrs. Davis also guarantee the loan. The Final Commitment Letter included among other things, a requirement for Defendant's profit participation, personal guaranties, stock pledges, and a management consulting contract requirement. The asset purchase closing was scheduled for January 18, 1991.

11. On January 28, 1991, Defendant claimed there was a potential margin imbalance in the Sun Bank Loan for which Defendant demanded that shareholders of Plaintiffs Corporation provide security. After negotiations, Defendant required Plaintiffs to deposit two hundred and fifty thousand dollars ($250,000.00) with Defendant to cover the imbalance. Plaintiffs was also required to obtain and personally guarantee a term loan on which Defendant could force Plaintiffs to draw in the event that the Sun Bank Loan was not brought into margin according to the schedule set out in the Sun Bank Loan Agreement.

12. On midnight, February 5, 1991, Plaintiffs closed on the Asset Purchase and Greyhound Loan Agreement, after the asset sellers threatened several times to declare a forfeit of the seven hundred and fifty thousand dollar deposit ($750,000.00) if the sale was not closed by midnight.

13. There is also a dispute as to the amount owed Defendant under the Profit Participation Agreement between Plaintiff and Defendant. The amount is based on Plaintiffs' Excess Operating Cash Flow for each fiscal year, and Plaintiffs and Defendant have substantially different calculations as to this amount. The discrepancy is based on what each party believes to be the "Scheduled Sun Principal" which would be deducted from the Operating Cash Flow in determining the Excess Operating Cash Flow. Plaintiffs believes the amount of "Scheduled Sun Principal" to be the

amount actually paid to Sun Bank, which was three million dollars ($3,000,000.00), the amount of the loan from Sunbank to Plaintiffs. Defendant believes the amount to be much less.

## DISCUSSION

Defendant first alleges in the Motion to Dismiss that personal jurisdiction is lacking because there are no facts which Plaintiff could allege which would support in personam jurisdiction over GFC in Florida and that Plaintiffs failed to make allegations of personal jurisdiction over Defendant in the Complaint. Section 48.193(1)(b), Florida Statutes, subjects any person who commits a tortious act within the state to the jurisdiction of Florida.

In deciding whether this Court has jurisdiction over the non-resident Defendant, two issues must be addressed: First the Court must find that Defendant is amenable to service under section 48.-193(1)(b) and additionally, that the assertion of jurisdiction comports with the requirements of due process. *Davis v. Pyrofax Gas Corp.*, 492 So.2d 1044 (Fla.1986); *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir.1985). Federal due process requires that a nonresident have sufficient "minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–474, 105 S.Ct. 2174, 2182–83, 85 L.Ed.2d 528 (1985).

Plaintiffs allege in the Complaint that Defendant committed fraud and fraud in the inducement, and also argue in Plaintiffs' Response and Memorandum of Law to Defendant's Motion to Dismiss, that Defendant maintained an office in the state pursuant to 48.193(1)(a) and committed a tortious act within the state of Florida pursuant to section 48.193(1)(b). The facts set out in the Complaint, alleging fraud and fraud in the inducement, are sufficient to fall within the language of section 48.193.

The commission of a tort for purposes of establishing long-arm jurisdiction does not require physical entry into the state; it does require that the place of injury be within the state of Florida. *International Harvester Co. v. Mann,* 460 So.2d 580 (Fla. 1st DCA 1984).

In order to maintain an action for fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations of fraud be stated with particularity. An action for fraud requires allegations of a false statement regarding a material fact, knowledge of its falsity, the intention that the lie be acted upon, and injury to the other party caused by reasonable reliance on the representation. *Groome v. Feyh,* 651 F.Supp. 249 (S.D.Fla.1986).

Upon due consideration, the Court finds that the Complaint satisfies the requirements of long-arm jurisdiction over the Defendant by alleging that the Defendant committed fraud and had a registered agent in Florida.

This decision does not offend due process requirements because Defendant, by having a registered agent in Florida, had "fair warning that a particular activity would subject [them] to the jurisdiction of a foreign sovereign"; and the injury to Plaintiff arose from the activities between Plaintiff and Defendant in the state of Florida. *Burger King Corp. v. Rudzewicz,* 471 U.S. at 472–474, 105 S.Ct. at 2182–83.

The Court further finds that the forum selection clause does not remove Plaintiff from jurisdiction in Florida because a forum selection clause is not enforceable when Plaintiff shows that the clause was the result of fraud. *First Pacific Corp. v. Sociedade de Empreendimentos e Construcoes, LTDA,* 566 So.2d 3, 4 (Fla. 3d DCA 1990); *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 16, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972).

ORDERED that the motion to dismiss or to transfer be denied.

DONE and ORDERED.