**COCA–COLA FOODS, a division of the Coca–Cola Company, Plaintiff,**

v.

**EMPRESA COMERCIAL INTERNACIONAL DE FRUTAS S.A.; Apul Fruitconsult AG; Carronade International Trading Limited; Atalanta Corporation; Pittra, Inc.; and G.B. International, Inc., Defendants.**

No. 96–358–CIV–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 27, 1996.

James B. Murphy, Jr., Daniel F. Molony, William A. Gillen, Jr., Shackleford, Farrior, Stallings & Evans, P.A., Tampa, FL, Timothy Jones Manor, John A. Reed, Jr., Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, FL, Joseph H. Hunt, King & Spalding, Atlanta, GA, and L. Joseph Loveland King & Spalding, Houston, TX, for Coca–Cola Foods, a division of The Coca–Cola Company.

Mark E. Levitt, Hogg, Allen, Norton & Blue, P.A., Tampa, FL, L. Havard Scott, III, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., Miami, FL, John H. Clegg, James A. Babst, Daphne P. McNutt, and Virginia Quijada, Chaffe, McCall, Phillips, Toler & Sarpy, L.L.P., New Orleans, LA, for Empresa Comercial Internacional De Frutas S.A. and Apul Fruitconsult AG.

Richard H. Webber, Patrick V. Martin, Hill, Rivkins, Loesberg, O'Brien, Mulroy & Hayden, New York City, and Darryl R. Richards, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, FL, for Atalanta Corporation and Pittra, Inc.

L. Robert Bourgeois, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for G.B. International, Inc.

### ORDER OF REFERRAL ON DEFENDANT EMPRESA AND APUL'S MOTION TO DISMISS

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following motions and responses:

1. Defendant Empresa Comercial Internacional De Frutas S.A. ("Empresa") and Defendant Apul Fruitconsult Ag's ("Apul") motion to dismiss for lack of personal jurisdiction and supporting memorandum of law, filed July 19, 1996. (Docket Nos. 72–73)

2. Plaintiff Coca–Cola Company's ("Coca–Cola") memorandum of law in opposition to Empresa and Apul's motion to dismiss for lack of personal jurisdiction, filed August 5, 1996. (Docket No. 88)

3. Defendant Atalanta Corporation ("Atalanta") and Pittra, Inc.'s ("Pittra") response to Empresa and Apul's motion to dismiss for lack of personal jurisdiction and memorandum of law in opposition, filed August 8, 1996. (Docket No. 83) [1]

4. Empresa and Apul's request for certification of appeal and stay of proceedings pursuant to 28 U.S.C. § 1292(b) and memorandum of law in support, filed July 16, 1996. (Docket Nos. 67–68)

5. Coca–Cola's memorandum of law in opposition to Empresa and Apul's request for certification of appeal and stay of proceedings, filed August 2, 1996. (Docket No. 80)

### I. FACTUAL BACKGROUND

Coca–Cola filed its complaint on February 21, 1996 against Empresa, Apul, Carronade International Trading Limited, Atalanta, Pittra, and G.B. International, Inc. ("G.B.I."). (Docket No. 1) Coca–Cola subsequently amended its complaint on June 4, 1996. (Docket No. 52). The amended complaint ("complaint") alleges twelve (12) counts. However, only five (5) counts relate to Empresa and Apul: Count I (fraudulent inducement); Count II (conspiracy); Count III (negligent misrepresentation); Count VI (breach of express warranty); Count IX (breach of implied warranty); and Count XII against only Apul (breach of express warranty and declaratory judgment for indemnification).

For all intents and purposes, this cause of action originated from Coca–Cola's purchase of approximately 865,000 gallons of apple juice concentrate (the "juice") from Pittra and G.B.I. Although Coca–Cola contracted to purchase 100% pure juice, it later discovered that the purchased juice allegedly contained what is called "fructiline." (Docket No. 73) Fructiline is a naturally occurring sweetener which is safe for use in foods. (Coca–Cola's amended complaint, Docket No. 52)

Coca–Cola now seeks relief from this Court against Empresa and Apul. Coca–Cola states that Empresa and Apul are subject to the jurisdiction of this Court pursuant to Florida's long-arm statute. set forth in Section 48.193, Fla.Stat. (1995). (Coca–Cola's complaint, Docket No. 52) Additionally, Coca–Cola alleges that Empresa and Apul have sufficient "minimum contacts" with the State of Florida to fulfill the requirements for "personal jurisdiction." (Docket No. 52)

Coca–Cola claims that Empresa and Apul used, as broker agents, Atalanta/Pittra and G.B.I. to supply and deliver the juice.[2] (Docket No. 88) In support of this "agency" argument, Coca–Cola submits the affidavit of Mr. Agnes Junger, the former president of Pittra. Junger states in his affidavit that Pittra did not "trade from its own account" but instead obtained a "purchase inquiry"

---

1. This Court finds that Defendant Atalanta and Pittra's response is wholly superfluous and has only delayed these proceedings. Atalanta and Pittra submit no new case law or present no evidence which substantiates any position whatsoever. In the future, the Court requests that Atalanta and Pittra govern themselves accordingly.

2. In April 1993, Atalanta acquired Pittra at which time Pittra became a division of Atalanta and continues to do business as Pittra. (Junger Affidavit, Docket No. 88)

from Coca–Cola which included the quantity, delivery dates, and customer specifications and relayed this inquiry to Empresa and Apul. (Affidavit of Junger, Docket No. 88) "In other words, as a general rule, Pittra did not trade for [sic] its own account when dealing with Apul/Empresa and acted only as a sales agent/broker in the United States for these companies." (Affidavit of Junger, Docket No. 88) In summary, Coca–Cola claims that Empresa and Apul were the controlling principal for its broker agents, Pittra and G.B.I, and knew: (1) that the juice was for Coca–Cola; (2) arranged the delivery to Jacksonville, Florida; and (3) the juice's specifications (100% pure). (Docket No. 88)

Empresa and Apul contest Coca–Cola's agency argument, providing the affidavit of Mr. Amnon Barasch, the director of both Empresa and Apul. (Affidavit of Barasch, Docket No. 73) Through Barasch's sworn statements, Apul claims that it is not a trader, that it provides only consulting and clerical services to international commodity traders, and that at no time did it enter into an agency or brokerage agreement with Pittra or G.B.I. (Docket No. 73) Additionally, Empresa claims that although it is a trader, it only sold the juice directly to Pittra and G.B.I. and never contracted with either Pittra or G.B.I. to act as broker agents for the juice. (Docket No. 73) Not only do Empresa and Apul contest Coca–Cola's "agency" argument, but they also argue that: (1) neither Empresa or Apul had any contact whatsoever with Coca–Cola concerning the juice shipment; (2) neither Empresa or Apul manufactures or processes apple juice concentrate; and (3) neither Empresa or Apul, as foreign corporations, conduct business or have commercial or property interests in the State of Florida.

## II. STANDARD OF REVIEW

■ Initially, the burden of establishing jurisdiction over a non-resident defendant lies with the plaintiff. *Morris v. SSE, Inc.*, 843 F.2d 489 (11th Cir.1988). In a diversity action, a plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the applicable state statute; it is not neces-

sary to plead the supporting facts. Fla. R.Civ.P. 1.070(i). *See Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla.1989).

■ In response, a defendant may defeat the assertion of jurisdiction by providing facts inconsistent with or contrary to the statutory basis. *Core Indus., Inc. v. Agostinelli*, 591 So.2d 207 (Fla. 4th DCA 1991). Only after a defendant raises a meritorious challenge to the jurisdiction of the court, by use of affidavits, documents, or testimony, does the burden shift back to the plaintiff to prove jurisdiction through affidavits, testimony, or documents. *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1111 (11th Cir.1990); *Sims v. Sutton*, 451 So.2d 931 (Fla. 3d DCA 1984). Upon shifting the burden back to the plaintiff, "the non-moving party may not rest merely upon allegations or denials in his pleading but his response by affidavit or otherwise must set forth specific facts showing the court has jurisdiction." *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir.1974). Where affidavits cannot be harmonized, the trial court must hold a limited evidentiary hearing to determine the jurisdiction issue. *Parthenais*, 554 So.2d at 503.

■ When a court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a nonresident defendant. *Morris*, 843 F.2d at 492. A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. *Madara v. Hall*, 916 F.2d 1510 (11th Cir.1990). In ruling on the motion to dismiss, the court must accept the facts alleged in the plaintiff's complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.* Moreover, where the plaintiff's complaint and the defendant's affidavits conflict, the court is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. DISCUSSION

Empresa and Apul allege in their Motion to Dismiss that personal jurisdiction is lacking because they are foreign corporations

organized and existing under the laws of foreign countries. Further, Empresa and Apul contend that this Court does not have personal jurisdiction because neither party has the requisite minimum contacts with the state of Florida. Lastly, Empresa and Apul controvert Coca–Cola's application of Florida's long-arm statute, claiming that they are not subject to Florida Statutes, Section 48.193's provisions.

### A. Governing Law

■ The determination of personal jurisdiction over a nonresident defendant requires the Court to engage in a two-part analysis. *Cable/Home Communication Corp. v. Network Prod., Inc.*, 902 F.2d 829, 855 (11th Cir.1990). In a federal diversity action such as this, a district court first considers the presence or absence of personal jurisdiction according to the law of the state in which that court is situated. *Pizzabiocche v. Vinelli,* 772 F.Supp. 1245 (M.D.Fla.1991); *Voorhees v. Cilcorp, Inc.,* 837 F.Supp. 395 (M.D.Fla.1993). In this case, Coca–Cola asserts that this Court has personal jurisdiction pursuant to Section 48.193, Florida's long-arm statute. Thus, the Court must first look to Section 48.193 in order to address Empresa and Apul's jurisdictional argument.

Upon finding a basis for the assertion of personal jurisdiction under the applicable state statute, the Court must consider the second prong of the jurisdiction test which is a due process analysis. *Black v. Bryant,* 905 F.Supp. 1046, 1051 (M.D.Fla.1995). This due process analysis is also a two-prong inquiry requiring the Court to initially determine whether sufficient minimum contacts exist between the defendant and the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. *Madara,* 916 F.2d at 1510. Finally, the second prong under the due process analysis requires the Court to determine that the maintenance of a suit is reasonable and does not violate "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Only if both prongs of the overall jurisdictional test are satisfied, in this case Florida's long-arm statute and the due process analysis, may the Court exercise personal jurisdiction over nonresident defendants, Empresa and Apul. *Madara,* 916 F.2d at 1516.

### B. Long–Arm Jurisdiction

■ Personal jurisdiction over a nonresident defendant must be authorized by specific legislation: the state's "long-arm" statute. *Hoechst Celanese Corp. v. Nylon Eng'g Resins, Inc.,* 896 F.Supp. 1190, 1192 (M.D.Fla.1995) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 109, 108 S.Ct. 404, 412, 98 L.Ed.2d 415 (1987)). In this instance, the Court is required to construe the Florida's long-arm statute as would the Florida Supreme Court. *Madara,* 916 F.2d at 1514 (citing *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.,* 701 F.2d 889, 890–91 (11th Cir.1983) and *Cable/Home,* 902 F.2d at 856). Florida's long-arm statute must be strictly construed, and the burden of proving facts which justify use of the statute is on the plaintiff. *Oriental Imports,* 701 F.2d at 890–91.

■ The uncontroverted evidence shows that Empresa and Apul are not licensed by the state of Florida and have no employees, officers, property, telephone number or mailing address in Florida. Moreover, Empresa and Apul anticipated Coca–Cola's response to its motion to dismiss concerning Section 48.193 because Coca–Cola failed to identify which particular subsection of Florida's long-arm statute was applicable.

In light of Barasch's affidavit submitted by Empresa and Apul, the burden shifts to Coca–Cola to affirmatively support its jurisdictional allegations in the complaint. *Kelly v. Kelly,* 911 F.Supp. 518, 521 (M.D.Fla.1995) ("If Defendants sufficiently challenge Plaintiff's assertions, then Plaintiff must support his allegations and cannot rely only on the factual allegations published in his complaint"); *Prentice v. Prentice Colour, Inc.,* 779 F.Supp. 578, 586 (M.D.Fla.1991). Accordingly, the Court will address the relevant portions of the long-arm statute, Section 48.193(1)(b), (f)2, and (g), Fla.Stat. (1995), as asserted by Coca–Cola. (Docket No. 88). Section 48.193 provides in relevant part:

**1180**

(1) Any person, whether or not a citizen or resident of this state, who personally *or through an agent* does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

. . . .

(b) Committing a tortious act within this state.

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

. . . .

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

*Fla.Stat.* § 48.193(1)(b), (f)2, (g).

■ Coca–Cola contends that Empresa and Apul committed intentional tortious acts in Florida because they made false statements and assurances to their agents Pittra and G.B.I. that the juice was 100% pure. Importantly, the commission of a tort for purposes of establishing long-arm jurisdiction does not require physical entry into the state. *M.G.J. Indus., Inc. v. Greyhound Fin. Corp.*, 801 F.Supp. 614, 617 (M.D.Fla. 1992) (citing *Int'l Harvester Co. v. Mann*, 460 So.2d 580 (Fla. 1st DCA 1984)). Instead, all that is required in this case, under the statutory provision, is that the place of injury be within the state of Florida. *See id.*

Additionally, Coca–Cola claims that Empresa and Apul conspired to perpetuate fraud by intentionally representing to Coca–Cola that the juice was 100% pure. In support of these claims, Coca–Cola submitted Junger's affidavit which presented a myriad of factual allegations supporting their jurisdictional argument.

First, Coca–Cola argues that Barasch's relationship with both Empresa and Apul, as director of both corporations, establishes "ample grounds for exercising jurisdiction." (Docket No. 88) Second, Coca–Cola submits excerpts from a telefax sent by Barasch to Junger which allegedly confirms that Empresa and Apul own processing plants which produced the juice. Third, Coca–Cola contends that Barasch traveled to Florida to discuss the blending techniques for the production of the juice. Fourth, Coca–Cola relies on Junger's affidavit and its exhibits to establish the agency relationship between Pittra, Empresa, and Apul. (See Factual Background, *supra*)

Moreover, Coca–Cola alleges that Empresa and Apul contracted, through their broker agents Pittra and G.B.I., to deliver the juice concentrate to Florida. Apparently, Coca–Cola intends to rely on its "agency" argument to support its jurisdictional claim under Section 48.193(1)(g). However, Empresa and Apul, through Barasch's affidavit, controvert this agency argument.

In addition, Empresa and Apul argue that the juice "had no impact in the state of Florida." (Docket No. 73) This is based on the allegations that the purchase orders reveal that the juice was sold by Pittra and G.B.I. to Coca–Cola of Texas, then delivered to Winterhaven, Florida were the juice was re-routed to Puerto Rico and Japan. While Empresa and Apul admittedly "may have known that Pittra and G.B.I. intended to sell the juice to Coca–Cola of Texas," they contend that at no time did they have any knowledge or control of the production and distribution of the juice. Thus, Empresa and Apul allege that they did not avail themselves of the benefits and protection of the laws of the state of Florida. (Docket No. 73)

From the above-stated allegations, Coca–Cola attempts to meet its burden in providing this Court with specific facts showing that the Court has jurisdiction. However, Empresa and Apul have controverted practically every fact alleged by Coca–Cola with Barasch's affidavit and its exhibits. The Court has reached an impasse from which it is unable to harmonize the affidavits submitted by both sides.

Therefore, in order to determine whether Coca–Cola has satisfied the first prong of the overall jurisdiction test, an evidentiary hearing must be held for additional fact-finding. Specifically, evidence must be taken to determine whether the alleged intentional torts were specifically designed to cause harm to Coca–Cola in the state of Florida and whether Pittra and G.B.I. acted as broker agents for Empresa and Apul. Based upon current allegations and information provided to the Court, it appears that such a finding would bring Empresa and Apul squarely within the confines of Florida's long-arm statute and, thus, satisfy the initial prong of the jurisdictional test.

## C. Due Process Analysis

Upon the taking of evidence, if the requirements of the Florida long-arm statute are satisfied, the Court then must determine whether the exercise of personal jurisdiction over Empresa and Apul comports with due process under federal constitutional law. *Black,* 905 F.Supp. at 1053. First, the Court must determine whether sufficient minimum contacts exist between Empresa, Apul, and the state of Florida.

"The first prong of this second, constitutional, phase of the Court's jurisdictional analysis asks the Court to consider whether the defendant has purposefully established minimum contacts with the forum state out of which the instant action arises." *Hoechst.,* 896 F.Supp. at 1193 (citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty.,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1030–31, 94 L.Ed.2d 92 (1987)). Moreover, the Court's minimum contacts test is based on whether the defendant purposefully availed himself of the privilege of conducting activities with the forum state, thus invoking the benefits and protection of its laws. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* at 475, 105 S.Ct. at 2183. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). However, jurisdiction is proper where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State. *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183. *See Asahi,* 480 U.S. at 111, 107 S.Ct. at 1032 ("The substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State").

In *Asahi,* the Court provided additional conduct which, along with the placement of a product into the stream of commerce, may indicate an intent or purpose to serve the market in the forum State. *Asahi,* 480 U.S. at 111, 107 S.Ct. at 1032. However, the *Asahi* Court stated that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.*

From the *Asahi* analysis, Empresa and Apul argue that, based on the information furnished in Barasch's affidavit, they neither purposefully availed themselves of the Florida market nor had any reason to anticipate being haled into a Florida court. Thus, Empresa and Apul contend that they did not have sufficient contact with the state of Florida to justify this Court's exercise of personal jurisdiction.

In contrast, Coca–Cola argues that "minimum contacts" exist between Empresa, Apul, and Florida, stating that "Empresa and Apul purposely availed themselves of the privilege of selling . . . [the juice] which they shipped directly to a customer in Florida." (Docket No. 88) The Court again notes that Coca–Cola's factual assertions discussed above lack sufficient clarity. Accordingly, this issue also requires additional fact finding to determine the extent or degree of Empresa and Apul's contacts with the state of Florida. Therefore, the Court refers this matter to be resolved together with the long-arm jurisdiction issue in an evidentiary hearing.

Upon a determination that sufficient minimum contacts exist between Empresa, Apul, and the forum state, the second prong of the due process analysis requires the Court to determine whether the notions of fair play and substantial justice comport with the exercise of personal jurisdiction over Empresa and Apul. To determine whether the assertion of personal jurisdiction will comport with fair play and substantial justice, Empresa and Apul's contact with the state of Florida must be considered in light of several factors. These factors include the following: burden on the defendant in defending the lawsuit in the forum state, the forum state's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, interstate judicial system's interest in obtaining most efficient resolution of the controversy, and shared interests of state in furthering fundamental substantive social policies. *Asahi*, 480 U.S. at 113, 107 S.Ct. at 1033; *Madara*, 916 F.2d at 1517.

As discussed above, it is presently unclear whether Empresa and Apul have purposefully established minimum contacts with the State of Florida such that they should "reasonably anticipate being haled into court" in this state. *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). Thus, this Court postpones the second prong of the due process analysis pendent upon the factual findings made at the evidentiary hearing.

· At this point, the Court recognizes that Coca–Cola has attempted to set forth substantial allegations in their complaint. However, as to these specific defendants, Empresa and Apul, the allegations currently submitted are insufficient to make a full and fair determination of personal jurisdiction. Therefore, in the interests of justice, the Court requires an evidentiary hearing to consider the issues raised in this order as well as those issues raised in Empresa and Apul's request for certification of appeal and stay of proceedings pursuant to 28 U.S.C. § 1292(b). (Docket Nos. 67–68, 80). Accordingly it is

**ORDERED** that this cause of action be **referred** to the assigned magistrate judge for an evidentiary hearing, in accordance with the directions of this order, and issuance of a report and recommendation.