John MADARA, Plaintiff–Appellant,

*v.*

Daryl HALL, Defendant–Appellee.

No. 89–5850.

United States Court of Appeals, Eleventh Circuit.

Nov. 7, 1990.

Steven M. Kramer, Steven M. Kramer & Associates, New York City, Mark S. Guralnick, Garber & Guralnick, Fort Lauderdale, Fla., for plaintiff-appellant.

Brian D. Caplan, Steven M. Hayes, Parcher & Hayes, New York City, Thomas W. McAiley, James S. Robertson, Beckham, McAiley & Schulz, Miami, Fla., for defendant-appellee.

Before KRAVITCH and COX, Circuit Judges, and DYER, Senior Circuit Judge.

COX, Circuit Judge:

John Madara, the plaintiff, appeals the district court's dismissal of his libel suit against defendant Daryl Hall. We affirm.

## I. FACTS AND PROCEEDINGS BELOW

The genesis of this libel suit against entertainer Daryl Hall is an interview Hall gave by telephone from New York to a reporter for *Music Connection* magazine in California. The interview appeared in the November 24–December 14, 1986 issue of the magazine. The alleged libel is contained in a paragraph that quoted Hall as follows:

> I had my first mini-disillusionment with the music business early on. I was working with this guy John Madiera [sic] in Philadelphia; he wrote "At the Hop" and a whole bunch of things, and he had his day in the sun, but he was pretty much a small-time kind of a guy. I was doin' sessions with him, gettin' paid by him—bein' *screwed* by him, basically.

Appellant's Record Excerpts and Appendix, A39, A41. (Copy of *Music Connection* interview) (emphasis in text of article). In December 1987, Madara sued Hall for libel in the United States District Court for the Southern District of New York. That court dismissed the action as time-barred under New York's one-year statute of limitations. In May 1988, Madara filed this libel action in the Southern District of Florida. Subject matter jurisdiction was based on diversity of citizenship. Madara sought to obtain the benefit of Florida's two-year statute of limitations for such actions.

Hall filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. He asserted that the complaint failed to state a claim upon which relief could be granted because, applying Florida's borrowing statute, California's one-year statute of limitations applied and the action was therefore time-barred. Hall also sought dismissal under Rule 12(b)(2) on the ground that the court lacked personal jurisdiction over him.

The district court granted Hall's motion to dismiss. *Madera [sic] v. Hall*, 717 F.Supp. 812 (S.D.Fla.1989). Addressing the grounds for the motion in the same order as presented by Hall, the court held first that for the purposes of the borrowing statute, Florida courts apply the "significant relationship" test (from *Bates v. Cook, Inc.*, 509 So.2d 1112, 1115 (Fla.1987)) to determine in which state the cause of action arose. *Madera*, 717 F.Supp. at 815. The court applied the significant relationship test, assessed the relationships among the parties, the occurrence and the forum state, and concluded that the cause of action arose in California. The court then held that the action was time-barred in Florida. *Id.* at 816.

The court next addressed the personal jurisdiction ground of Hall's motion to dismiss. The court determined that the complaint alleged tortious conduct sufficient to bring the defendant within the reach of Florida's long-arm statute. *Id.* at 817. However, the court concluded that because the Due Process Clause would not countenance the assertion of personal jurisdiction over Hall, the complaint should be dismissed for that reason as well. *Id.* at 818.

On appeal, Madara claims first that the district court erred in concluding that the cause of action arose in California so that under Florida's borrowing statute, California's one-year statute of limitations governs and the action is time-barred. He argues that the cause of action arose in Florida when copies of the magazine were distributed there, citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) and *Stepanian v. Addis*, 782 F.2d 902 (11th Cir.1986) to support this claim. Madara's second argument on appeal is that the district court erred in holding that the Due Process Clause of the Fourteenth Amendment precludes the exercise of personal jurisdiction over Hall.

■ The district court ruled on Hall's 12(b)(6) motion, failure to state a claim because the applicable statute of limitations barred the action, before it ruled on his 12(b)(2) motion, lack of personal juris-

diction. The court should have addressed the personal jurisdiction question first. We affirm the dismissal because due process does not permit the exercise of personal jurisdiction over Hall in Florida for this cause of action. We vacate the district court's holding regarding application of the California statute of limitations because Hall was not subject to the jurisdiction of the court, and therefore could not be personally bound by its rulings. Therefore, the issue should not have been reached.[1]

## II. DISCUSSION

We review the dismissal of an action for lack of personal jurisdiction *de novo*. *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer*, 877 F.2d 912, 916 (11th Cir.1989) (citations omitted). When a district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988). A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. *Id.* The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.* Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *Id.*

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.

1990); *Alexander Proudfoot Co.*, 877 F.2d at 919. First, we consider the jurisdictional question under the state long-arm statute. *Cable/Home Communication Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919. If there is a basis for the assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)); *Cable/Home Communication Corp.*, 902 F.2d at 855; *Alexander Proudfoot Co.*, 877 F.2d at 919. Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant. The structure of our analysis is unaffected by the fact that this is a libel case; the "personal jurisdiction inquiry in a libel case is the same as that used in all cases...." *Army Times Publishing Co. v. Watts*, 730 F.2d 1398, 1408 (11th Cir.1984).

### A. Florida Long–Arm Jurisdiction

The reach of the Florida long-arm statute is a question of Florida law. Therefore, federal courts are required to construe it as would the Florida Supreme Court. *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890–91 (11th Cir.1983); *Moore v. Lindsey*, 662 F.2d 354, 357–58 (5th Cir. Unit B 1981).[2]

The Florida Supreme Court has recently emphasized that the jurisdictional

---

1. [A] defendant may join objections to jurisdiction under Rule 12(b)(2) with a motion to dismiss for failure to state a claim or any other defenses that are assertable by motion without waiving the jurisdictional defense.... As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint.
C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1351, at 243–44. *See also Arrowsmith v. United Press Int'l.*, 320 F.2d 219,

221 (2d Cir.1963) (holding that it was error for district court to dismiss action for failure to state a claim prior to addressing challenges to personal jurisdiction and venue, because dismissal on the former ground would be with prejudice, while dismissal for either of the two latter grounds would be without prejudice).

2. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit.

analysis under the Florida long-arm statute and the jurisdictional analysis under the federal constitution are distinct:

> By enacting [the long-arm statute], the legislature has determined the requisite basis for obtaining jurisdiction over nonresident defendants as far as Florida is concerned. It has not specifically addressed whether the federal constitutional requirement of minimum contacts has been met. As a practical matter, it could not because each case will depend upon the facts.

*Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 500 (Fla.1989). We conclude that the tortious act provision of the Florida statute is sufficient to provide a basis for asserting personal jurisdiction over defendant Hall.[3]

The tort of libel is generally held to occur wherever the offending material is circulated. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984); Restatement (Second) of Torts § 577A, Comment a (1977). Florida courts subscribe to this rule. *See, e.g., Firestone v. Time, Inc.*, 271 So.2d 745 (Fla. 1972), *vacated on other grounds*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976) (Florida courts had jurisdiction in defamation action against nonresident publisher of nationally-distributed magazine); *Friedgood v. Peters Publishing Co.*, 521 So.2d 236 (Fla. 4th Dist. Ct.App.1988), *cert. denied*, 488 U.S. 1042, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989) (same); *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593 (Fla. 4th Dist. Ct.App.1983), *petition denied*, 443 So.2d 979 (Fla.1984) (same).[4] *See also Rebozo v. Washington Post Co.*, 515 F.2d 1208, 1212 (5th Cir.1975)[5] (interpreting tortious act provision of Florida long-arm statute to extend to situation where nonresident publisher prints allegedly libelous statement and distributes copies of publication in Florida). The rule is unchanged by the fact that the defendant here is an individual and not the publisher of the alleged libel. *See Stepanian v. Addis*, 782 F.2d 902 (11th Cir.1986) (in defamation action against attorney who made allegedly libelous statements to reporter in Washington, D.C., where statements were eventually published in newspapers distributed in Florida, court stated, "where a person informs a news reporter, the tort of slander and libel can occur [in Florida,] where the allegedly false material is circulated.").[6] Therefore, because the tort in this case occurred in Florida, a federal district court sitting in that state may exercise jurisdiction over defendant Hall under the Florida long-arm statute. Having completed the first step of our two-part analysis, we next turn to the due process requirements of the federal Constitution.

### B. Due Process

■ This court has recognized that the determination of whether the assertion of personal jurisdiction over a nonresident defendant comports with due process is itself

---

**3.** Fla.Stat.Ann. § 48.193(1)(b) (West Supp.1990). The Florida long-arm statute provides in relevant part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
> . . . .
> (b) Committing a tortious act within the state.

*Id.* Because we find this provision sufficient, we decline to comment upon the possible applicability of other sections of the statute.

**4.** In *Firestone* and *Friedgood*, the plaintiff was a Florida resident. In *Byrd*, the residence of the plaintiff is not clear from the opinion. Regardless, the residence of the plaintiff is irrelevant because the Florida statute applies to "[a]ny person, whether or not a citizen or resident of this state. . . ." Fla.Stat.Ann. § 48.193(1)(b) (West Supp.1990).

**5.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**6.** We find no Florida cases that directly confront this question. However, we believe our interpretation is consistent with the way in which Florida courts would decide the issue if presented with it. That the suit here is not against the publisher does make an important difference in our due process analysis. *See* Part II.B., *infra*.

**1516**

a two-prong inquiry. First, we decide whether Hall has established "minimum contacts" with Florida. Second, we decide whether the exercise of personal jurisdiction over Hall would offend " 'traditional notions of fair play and substantial justice.' " *Williams Elec. Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir.1988) (quoting *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158).

### 1. Minimum Contacts

 Where a forum seeks to assert specific personal jurisdiction[7] over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985); *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J. concurring in judgment). This fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at the forum, *Keeton*, 465 U.S. at 774, 104 S.Ct. at 1473, and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).

 Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183; *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). However,

> the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State ... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283, *reh'g denied*, 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958). This requirement assures that a defendant will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts, *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183; *Keeton*, 465 U.S. at 774, 104 S.Ct. at 1478, or because of the unilateral activity of a third person. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183; *Helicopteros*, 466 U.S. at 417, 104 S.Ct. at 1873. Jurisdiction is proper where the defendant's contacts with the forum proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183 (quoting *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)). Although the concept of foreseeability is not irrelevant to this analysis, the kind of foreseeability critical

---

7. There are two types of personal jurisdiction: specific and general. Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action. General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation. *Helicopteros Nacionales de Colombia, N.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9, 104 S.Ct. 1868, 1872 nn. 8 & 9, 80 L.Ed.2d 404 (1984); *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 857 n. 41 (11th Cir.1990); *Morris v. SSE, Inc.*, 843 F.2d 489, 491 n. 2 (11th Cir.1988).

In his brief, Madara mixes a discussion of general jurisdiction and specific jurisdiction. At one point, he asserts that Hall's visits to Florida are "continuous and systematic," based apparently on what are, in fact, sporadic concert performances. Madara also implies that Hall's ownership of an interest in a partnership which is itself a limited partner in partnerships that own real estate in Miami and Jacksonville supports jurisdiction in this case. Indirect ownership of property, concert performances and the sale of records and the like are not related to the activity for which Hall is being sued—libel—except perhaps in the very broadest sense. If Hall could be sued on an unrelated cause of action because of concerts and record sales, then he likely would be amenable to suit in all the states of the union on any cause of action. We reject without further discussion the possibility that Hall is generally present in Florida for jurisdictional purposes based on these contacts.

to the proper exercise of personal jurisdiction is *not* the ability to see that the acts of third persons may affect the forum, but rather that the defendant's own purposeful acts will have some effect in the forum. *See Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987).

2. *Fair Play and Substantial Justice*

Once it has been determined that the nonresident defendant has purposefully established minimum contacts with the forum such that he should reasonably anticipate being haled into court there, these contacts are considered in light of other factors to decide whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *International Shoe Co.,* 326 U.S. at 320, 66 S.Ct. at 160). These other factors are the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184; *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564. Minimum requirements of "fair play and substantial justice" may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposefully engaged in forum activities. *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2185. Conversely, these considerations may serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Id.* at 477, 105 S.Ct. at 2184.

3. *Application of Due Process Standards*

Having set out the governing standards, we now apply these principles to Hall's activities in Florida. Hall performed in Florida twice in 1988, not at all in 1987 or 1986, and on less than six occasions in 1985. Affidavit of Allen J. Smith, R–8–1.

His musical recordings are widely distributed throughout Florida. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, R–13–9. He has no agents in Florida and does not maintain an office in the state. Affidavit of Allen J. Smith, R–8–1. He is a partner in a partnership that itself owns limited partnership interests in partnerships that own property in Miami and Jacksonville. *Id.* at 2. After this suit was filed, Hall was aware that *Music Connection* magazine distributed a small number of copies in Florida, but the record does not reveal if Hall was aware of this fact at the time he gave the interview. Affidavit of Daryl Hall, R–9–2. In fact, just eighteen copies of the November 24–December 14 issue were mailed to Florida. Affidavit of J. Michael Dolan, R–10–1. Madara alleges additional copies were sold on newsstands. Appellant's Brief at 1.

We first conclude that Hall did not purposefully establish sufficient minimum contacts with Florida so that he should reasonably anticipate being haled into court there. Madara argues that this case is governed by *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and that specific jurisdiction exists because the interview with *Music Connection* concerns the music business and Hall has exploited the music market in Florida through concert performances and the sale of his recordings there.

In his brief, Madara states that "[t]he issue is whether defendant, a world-renowned performing artist, ever exploited Florida as part of his musical market and whether he reasonably should have anticipated being haled into court here for libelous statements intentionally published there in a magazine that he knew had a national circulation." Appellant's Brief at 5. Madara answers that question by stating: "the contents of the defamatory statement, and the substantive issue at bar, arise out of the very activity that consumes the defendant's time in Florida and everywhere else—his business as a musical performer. Responding to a lawsuit based on that business is fair." *Id.* at 8.

In *Keeton*, the plaintiff, a New York resident, sued *Hustler* magazine, an Ohio corporation with its principal place of business in California, for incidents of alleged libel appearing in five separate issues of the magazine. The suit was brought in New Hampshire, the only state in which the statute of limitations had not run. The issue was whether *Hustler* magazine had sufficient minimum contacts with New Hampshire so that, consistent with Fourteenth Amendment due process, it would "'not offend "traditional notions of fair play and substantial justice"'" for *Hustler* to defend a suit there based on those contacts. *Keeton*, 465 U.S. at 780–81, 104 S.Ct. at 1481 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). The most important fact in *Keeton* was that *Hustler* magazine had voluntarily chosen to enter the New Hampshire market, where it sold 10,000 to 15,000 magazines per month. The Supreme Court held that the exercise of personal jurisdiction over the defendant was within the limits of due process:

> Where, as in this case, respondent Hustler Magazine, Inc., has continuously and deliberately exploited the New Hampshire market, it must reasonably anticipate being haled into court there in a libel action based on the contents of its magazine. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S., at 297–298, 100 S.Ct., at 567.... There is no unfairness in calling [*Hustler*] to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed.

*Keeton*, 465 U.S. at 781, 104 S.Ct. at 1481–82.

*Keeton* does not govern this case. In *Keeton* the defendant, *Hustler* magazine, was the entity that had both published the alleged libel and continuously and deliberately exploited the market of the forum. For this case to be parallel with *Keeton*, Hall would either have to have been the publisher of *Music Connection* magazine, or the alleged libel would have to have arisen from the activities through which Hall exploited the Florida market—his concert performances and recording sales. Although this *litigation* arose from Hall's statement, it did not arise from the activities Hall engaged in in Florida. The fact that Hall's comments were related to the music business is not significant; the Court in *Keeton* never implied that the libel there must relate substantively to a magazine of the kind in question and indeed never mentioned the topic or nature of the article at all. *Hustler* magazine was held subject to personal jurisdiction because it was sued on a "cause of action [that arose] out of the very activity being conducted, in part, in New Hampshire." *Keeton*, 465 U.S. at 780, 104 S.Ct. at 1481.

In *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), relied on extensively in *Keeton*, the Court held that an Oklahoma court could not, consistent with the Due Process Clause, exercise jurisdiction over a New York automobile distributor and a Connecticut retail automobile dealer in a products liability action arising from an automobile accident that occurred in Oklahoma. The Court rejected the plaintiff's argument that jurisdiction should be sustained merely because it was foreseeable that cars the defendants sold might be driven to Oklahoma. The Court clarified this position, stating that although foreseeability was not "wholly irrelevant,"

> the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.... The Due Process Clause, by ensuring the "orderly administration of the laws," ... gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

*Id.* at 297, 100 S.Ct. at 567 (citations omitted). Thus, although it was somewhat foreseeable that the car might later be taken to the forum state, the connection between the defendants' conduct and the Oklahoma automobile accident was too attenuated; the defendants could not reasonably anticipate being sued in Oklahoma for this cause of action, even though the litigation arose from their distribution and sale of the car. The defendants did not by their actions appoint the car as their agent for service of process, permitting suit wherever the car went. *See id.* at 296, 100 S.Ct. at 566. From this lack of contact with the forum state or predictability that its cars would be used in the forum state, the Supreme Court concluded that Oklahoma could not exercise personal jurisdiction over these defendants. *Id.* at 299, 100 S.Ct. at 568.

In *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987), the Court stated that the defendant's mere awareness that some of its products would eventually enter the forum state was not enough to support the exercise of personal jurisdiction. The Court required some purposeful act, directed at the forum state. *Id.* at 112, 107 S.Ct. at 1033. Because such an act was absent, the Court decided that the exercise of personal jurisdiction would exceed the limits of due process. *Id.* at 113, 107 S.Ct. at 1033.

Applying these principles to this case, we agree with the district court's conclusion that Hall is not subject to personal jurisdiction in Florida for this cause of action. Simply giving an interview to a reporter is not enough to cause Hall to anticipate being haled into court in Florida. Hall was not the magazine's publisher and did not control its circulation and distribution; thus, he is in a qualitatively different position than the defendant in *Keeton.* The act of giving the interview, and even its publication by *Music Connection* magazine, did not exhibit the "continuous[ ] and deliberate[ ] exploit[ation]" of the Florida market to the extent found important to jurisdiction in *Keeton.* 465 U.S. at 781, 104 S.Ct. at 1481. By giving the interview, Hall did not appoint copies of the magazine as his agent for service of process wherever a third party, the publisher, might choose to send those magazines. *Cf. World–Wide Volkswagen,* 444 U.S. at 296, 100 S.Ct. at 566. Finally, Hall's mere awareness, if he indeed was aware, that a small number of copies of the magazine might find their way to Florida is not enough to justify the exercise of personal jurisdiction.

Having determined that Hall's contacts with Florida are insufficient to establish constitutionally-required minimum contacts, we now look to other considerations outlined by the Supreme Court. These considerations may in exceptional cases serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184. The burden on Hall of defending this suit in Florida would be more than minimal, although we recognize that modern means of transportation and communication reduce this burden greatly. *See McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Madara has a strong interest in obtaining effective relief, particularly because the statute of limitations may have run in many other potential fora. However, suing in Florida is not convenient for Madara, a California resident. Florida has little interest in adjudicating this action because no party resides in the state, and very few copies of the *Music Connection* magazine issue were distributed in Florida. Our decision will not frustrate any of Florida's public policies. Finally, we conclude that neither the interstate judicial system's interest in obtaining the most efficient resolution of controversies nor the interest of the states in furthering fundamental social policies would be served by subjecting Hall to the jurisdiction of Florida courts. These considerations are insufficient to override our previous conclusion that Hall has not established minimum contacts with the forum state.

### III. CONCLUSION

We hold that to subject defendant Hall to the jurisdiction of a Florida court in this case would offend due process.

The part of the district court's opinion and order that dismisses Madara's complaint because the statute of limitations bars the action is VACATED. The part of the district court's opinion and order that dismisses the action for lack of personal jurisdiction is AFFIRMED.