**Deborrah R. NORRIS, Plaintiff,**

v.

**Robert Charles DAVIS, M.D., Marshall Davis, and Juanita Tyler, Defendants.**

**No. 96–3419–CIV.**

United States District Court, S.D. Florida.

March 3, 1997.

Francis X. Sexton, Jr., Coral Gables, FL, for Plaintiff.

James R. George, Miami, FL, Nathan Resnick, West Bloomfield, MI, for Defendants.

KING, District Judge.

### ORDER DISMISSING CASE

THIS CAUSE comes before this Court upon: Defendant Robert Charles Davis' Motion to Dismiss, filed January 2, 1997 to which Plaintiff responded in opposition on January 22, 1997, and Marshall Davis' Motion to Dismiss filed January 21, 1997 to which Plaintiff responded February 3, 1997.

The issue before the Court is whether this Court has personal jurisdiction over Defendants. For the reasons summarized below, this Court declines personal jurisdiction over Defendants.

### Factual Background

This action appears to stem from a series of lawsuits and criminal proceedings involving, and between, Plaintiff and Defendant, Robert Charles Davis ("R. Davis") beginning in 1987 in Utah. Plaintiff charged R. Davis with rape. When the criminal rape case was dismissed Plaintiff instituted a civil action against R. Davis. Apparently that case has languished until present without resolution.

Plaintiff claims that since the filing of that case R. Davis and the other two Defendants, Marshall Davis and Juanita Tyler, have waged a campaign of terror and harassment against her.

Plaintiff alleges that:

-R. Davis obtained Plaintiff's psychiatric records and disseminated same,

-R. Davis mailed a letter to a Florida law firm claiming that Plaintiff used false social security numbers, ran a scam against RDS Management, used false information to rent apartments, misrepresented her credentials to an employer, scammed a Miami dentist, and provided Plaintiff's psychiatric records to the law firm,

-R. Davis wrote to the Bankruptcy Court Fraud Division in Knoxville, Tennessee claiming that Plaintiff had committed tax and mail fraud and used false social security numbers and provided the Division with Plaintiff's credit report,

-R. Davis called Plaintiff's landlord in Miami, Florida and convinced the landlord to provide documents to R. Davis,

-R. Davis called Plaintiff's attorney, F. Sexton and told him that he was attempting to instigate proceedings against her with the State Attorney's office in Florida,

-Marshall Davis obtained credit reports as to Plaintiff in order to assist R. Davis in locating and prosecuting Plaintiff,

-Juanita Tyler called the law firm of Kenneth Lowenhaupt in Miami, Florida and told them Plaintiff owed CPA firm Davis & Davis money, that Plaintiff was a scam artist and requested information about Plaintiff,

-Juanita Tyler facsimilied a letter to the Lowenhaupt firm informing them of Plaintiff's criminal record and requested information concerning Plaintiff,

-R. Davis served Plaintiff, in Utah, with a Summons and Complaint in an action filed in California,

-R. Davis filed a second lawsuit in Arizona concerning the same charges,

-R. Davis called Plaintiff's former employer, Ward Stone College, with whom Plaintiff was engaged in litigation, offering assistance with the College's litigation against Plaintiff and told them Plaintiff was a disreputable individual and a scam artist,

-R. Davis called the law firm of Shutts & Bowen in Miami, who represented Ward

Stone College, and told them Plaintiff was a scam artist and that she falsified resumes,

-R. Davis wrote to Plaintiff's ex-husband, in Orem, Utah, and offered to assist him with child custody and child support disputes,

-R. Davis sent a letter to the I.R.S. in Ft. Lauderdale, Florida stating that a fraud had been perpetrated in the bankruptcy court, that Plaintiff had made material misrepresentation in her bankruptcy petition, that she used false information to secure credit, that she had avoided creditors and an I.R.S. lien, that she had settled a lawsuit for $200,000.00 which income was never reported, and that she makes her living as a professional litigator,

-R. Davis provided false information to prosecutors in Tennessee which impacted on the severity of her sentencing for writing bad checks (a charge Plaintiff admits to in her Complaint),

-R. Davis contacted Plaintiff's Probation Officer in Tennessee and claimed that Plaintiff had committed fraud and crimes in Florida,

-R. Davis sent a subpoena to Delta Airlines in connection with the litigation in California to obtain information which he subsequently used to harass Plaintiff,

-An unknown person called Plaintiff's attorney and made threatening remarks.

In this action, Plaintiff seeks compensatory and punitive damages for the following allegations: Count I, Intentional Infliction of Emotional Distress; Count II, Defamation; Count III, Invasion of Right to Privacy; Count IV, Abuse of Process; and, Count V, Violation of Fair Credit Reporting Act.

In summary, Plaintiff alleges that Defendant R. Davis, and Juanita Tyler, among others, sent letters, made telephone calls, improperly utilized credit reporting agencies, and filed various improper legal actions and pleadings. With respect to this jurisdiction, Plaintiff alleges that R. Davis made four defamatory telephone calls and mailed two defamatory letters into the state of Florida, and that Juanita Tyler sent one facsimile and made one telephone call into the State of

Florida. Marshall Davis is not alleged to have any contact with the state of Florida.

Defendants contend that this Court does not have personal jurisdiction over them and seek dismissal pursuant to Rules 4, 8, 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6).

## Legal Standard—Motion to Dismiss

A motion to dismiss will be granted where it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. "[D]ismissal is justified only when the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim." 5A Wright & Miller, *Federal Practice and Procedure* § 1357; *see also Bradberry v. Pinellas County,* 789 F.2d 1513, 1515 (11th Cir.1986). For the purpose of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). The issue is not whether the plaintiff will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims," *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## Legal Standard—Jurisdiction

■ A federal court sitting in diversity may assert jurisdiction over a non-resident defendant only to the extent permitted by the long-arm statute of the forum state, and only if the exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment. *Morris v. SSE, Inc.,* 843 F.2d 489, 492 n. 3 (11th Cir.1988) (citations omitted).

■ This Court must conduct a two-step analysis to determine whether it may exercise personal jurisdiction over a non-resident defendant. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990); *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir.1990). First the Court must address the issue of whether it may obtain personal jurisdiction over the defendant pursuant to Florida's long-arm statute. *Madara,* 916 F.2d at 1514. If a basis exists for asserting personal jurisdiction un-

der the state statute, the Court next must inquire whether the constitutional standards of due process have been met. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Madara,* 916 F.2d at 1514; *Cable/Home Communication,* 902 F.2d at 855. Both prongs of this analysis must be met in order for this Court to exercise jurisdiction over a non-resident defendant. *Madara,* 916 F.2d at 1514.

### Florida's Long–arm Statute

■ At the outset the Court notes that Florida law governs whether this Court has personal jurisdiction over Defendants. *Alexander Proudfoot Company World Headquarters v. Thayer* 877 F.2d 912, 919 (11th Cir. 1989).

■ Plaintiff claims this Court has jurisdiction under section 48.193(1)(b) of the Florida Statutes. After Defendants, through the submission of affidavits or other competent evidence, have properly challenged this Court's jurisdiction over them, Plaintiff has the burden of establishing that the Court properly has personal jurisdiction. *Bloom v. A.H. Pond Co.,* 519 F.Supp. 1162 (S.D.Fla. 1981). In the context of a motion to dismiss, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the non-resident defendant. *Morris,* 843 F.2d at 492.

In a case similar to this, in which a doctor made phone calls into Florida that were alleged to have defamed the Plaintiff, the District Court of Appeal of Florida, Fourth District, held that "it would hardly be fair for us to hold that a person committing the alleged tort of defamation by virtue of phone calls into this state can escape the jurisdiction of our courts." *Carida v. Holy Cross Hospital, Inc.,* 424 So.2d 849 (Fla. 4th Dist.Ct.App. 1982). Accordingly the exercise of personal jurisdiction over these Defendants would comport with Florida's Long–Arm Statute.

### Constitutional Standard

■ In spite of the fact that Florida's Long–Arm statute would allow this Court to properly exercise jurisdiction over these defendants, there are insufficient contacts al-

leged in Plaintiff's Complaint, memorandum, and supporting affidavits to meet the standard of traditional notions of fair play and substantial justice.

■ The first inquiry under the constitutional standard is whether the defendant has "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (citations omitted). As one treatise has recognized, the minimum contacts inquiry, and personal jurisdiction determinations in general, "are by their nature highly fact-specific." 4 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1073 (1987) ("Wright & Miller").

The Supreme Court elaborated on the minimum contacts test in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In that case, the Court introduced four factors to be considered as elements of fair play and substantial justice: the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental social policies. *Id.* at 292, 100 S.Ct. at 564–65.

The Eleventh Circuit has interpreted the minimum contacts test as a threshold inquiry to precede any inquiry into fair play and substantial justice. *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.,* 792 F.2d 989, 993 n. 4 (11th Cir.1986). In *Sea Lift,* the court held that in order to assert specific jurisdiction over a defendant, a court must first inquire into whether the case "arises out of" or "relates to" the defendant's contacts with the state. *Id.* at 993 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984)). The Eleventh Circuit amplified the test as follows:

> If the case does so arise and relate, we must then consider "'the relationship among the defendant, the forum, and the litigation' to determine whether the exer-

cise of jurisdiction [is] consistent with due process." *Borg–Warner [Acceptance Corp. v. Lovett & Tharpe, Inc.],* 786 F.2d [1055,] 1057 [ (11th Cir.1986) ], *quoting Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). This relationship will not support the exercise of in personam jurisdiction unless it includes "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Elkhart Engineering Corp. v. Dornier Werke,* 343 F.2d 861, 866 (5th Cir.1965), *quoting Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). [*See also Asahi Metal,* 480 U.S. 102, 107 S.Ct. at 1026–27]. "Considerations such as the quality, nature, and extent of the activity in the forum, the foreseeability of consequences within the forum from activities outside it . . . relate to whether it can be said that the defendant's actions constitute 'purposeful availment.' " *Prejean v. Sonatrach, Inc.,* 652 F.2d 1260, 1268 (5th Cir.1981). *Sea Lift* 792 F.2d at 993 (parallel citations and footnote omitted) This last factor echoed the Supreme Court's requirement that the defendant's contacts with the forum be such that the defendant should reasonably anticipate being haled into Court there. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567.

In this case Defendants would be greatly burdened if they were made to travel to Florida to defend this action. Defendants have never engaged in any business related activity here, and there is insufficient evidence to show affirmative tortious activity within Florida.

The allegations against R. Davis involve four telephone calls and two letters to Florida. Juanita Tyler is alleged to have made one telephone call and sent one facsimilie into Florida. The allegations against Marshall Davis do not even involve any allegation of direct contact with Florida. Plaintiff's other allegations involve activity in the states of Utah, California, Tennessee, Arizona, New York, and Michigan.

Moreover, Florida does not have a special interest in adjudicating this dispute, especially where considerations of comity exist.[1] Furthermore, declining to exercise jurisdiction would not harm Plaintiff's interests as she could address all of the allegations in her Complaint in Utah, in the case currently pending there.

## Conclusion

In short, construing Plaintiff's allegations as true for the purposes of the Motion to Dismiss, the Due Process clause of the Fourteenth Amendment prevents the Court from exercising personal jurisdiction over these Defendants.

Accordingly, after a careful review of the record, and the Court being otherwise fully informed in the premises, it is

ORDERED, ADJUDGED, and DECREED that Defendant R. Davis' Motion to Dismiss and Defendant Marshall Davis' Motion to Dismiss be, and the same are hereby, GRANTED. The above-styled action is hereby DISMISSED with prejudice to re-file the action in the Southern District of Florida, and without prejudice to refile elsewhere. All pending motions not otherwise ruled upon are DENIED as moot.

---

**1.** A state court action, *Deborrah R. Norris v. Robert Charles Davis,* Case Number 870907720, pending in Salt Lake City, Utah, is currently being litigated. In order to give effect to the laws and judicial decisions of the state of Utah, out of deference and respect, this Court must carefully consider the declination of jurisdiction.