[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11644
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-03109-JSM-TGW


ROBERT C. COURBOIN,

Plaintiff-Appellant,

versus

CANDACE SCOTT,
DENISE WENNOGLE,
SCOTT AND DALY, LLC,
CANDACE SCOTT, LLC,
JAMES JENSEN, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 1, 2014)

Before TJOFLAT, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Robert Courboin, proceeding *pro se*, appeals the district court's dismissal of his complaint asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2. On appeal, Courboin argues that the district court had personal jurisdiction over the defendants because RICO allows for nationwide service of process and that his complaint stated valid claims for relief.

## I.

Courboin filed this action in the United States District Court for the Middle District of Florida in December 2013. The facts on which the complaint is based arose during and over the course of Courboin's divorce proceedings in New Jersey, which concluded in 2011. At some point during the proceedings, Courboin moved from New Jersey to Florida.

Courboin was represented in the divorce by James Jensen and the law firm of Laufer, Dalena, Cadicina, Jensen and Boyd, LLC ("Jensen defendants"). Candace Scott, Denise Wennogle, and the law firms of Candace Scott, LLC, and Scott and Daly, LLC ("Scott Defendants"), represented Courboin's ex-wife. Kalman A. Barson and the Barson Group ("Barson defendants"), and Arthur J. Smith and Arthur J. Smith Appraisals, LLC ("Smith defendants"), were hired by

Scott to appraise marital assets for Courboin's ex-wife as part of the divorce proceedings. These attorneys and appraisers are the defendants in this action.

Courboin alleged in his complaint that he was illegally deprived of about $200,000 from his pre-divorce household assets as a result of the following conduct: (1) Scott overbilled Courboin's ex-wife and depleted the marital assets by using large and unnecessary form interrogatories during the divorce proceedings, which caused Courboin to be billed large amounts by Jensen to respond to the interrogatories; (2) Scott hired Barson and Smith to appraise marital assets, and Barson and Smith charged his wife inflated rates and used outdated forms, again depleting the marital assets; and (3) Jensen refused to cross-examine Barson about his exorbitant fees during the proceedings. With respect to one of the appraisals, Courboin alleged that Barson charged his ex-wife $56,000 to appraise her interest in certain business assets, valued at around $190,000, whereas Courboin had had the same assets appraised by a more reputable firm at a cost of $6,250. Courboin further alleged that he had witnesses and a neutral appraiser who would testify that "attorneys demand a 'cut' of up to 50% when they send an appraisal request to [appraisers]."

Based on these allegations, Courboin asserted that the defendants had violated RICO and the Sherman Act by stealing his and the people of New Jersey's money through their legal and appraisal practices.

3

The Smith and Scott defendants filed motions to dismiss based on, among other things, lack of personal jurisdiction, asserting that they had no substantial contacts with Florida and that all acts or omissions alleged in the complaint occurred outside of Florida.  Courboin responded to the Smith defendants' motion, but he did not address personal jurisdiction.  The Barson and Jensen defendants did not file responsive pleadings or motions to dismiss.[1]

The district court granted the two motions to dismiss and dismissed the complaint in its entirety as to all defendants.  The court first found that it lacked personal jurisdiction over all defendants because Courboin had not alleged any facts showing that the defendants had sufficient "minimum contacts" with Florida.  Furthermore, assuming that it had jurisdiction to decide the controversy, the court found that (1) Courboin failed to state a claim for which relief may be granted under either RICO or the Sherman Act; (2) the complaint should be dismissed as to all parties because it was frivolous, the non-moving defendants were similarly situated to the moving defendants, and the claims against all defendants were integrally related; and (3) venue was improper.  This appeal followed.

**II.**

We review the district court's dismissal of an action for lack of personal jurisdiction *de novo*.  *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

---

[1]    In response to Courboin's summons, Kalman Barson wrote a personal letter to Courboin, which was then entered on the docket as an "Answer."

4

### III.

In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff must establish a prima facie case of jurisdiction over a non-resident defendant. *Id.* at 1514; *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). In assessing a plaintiff's prima facie case, the court must accept the facts alleged in the complaint as true to the extent that they are uncontroverted by the defendant's affidavits. *Madara*, 916 F.2d at 1514.

### A.

When analyzing a dismissal for lack of personal jurisdiction, "we first determine whether the applicable statute potentially confers jurisdiction over the defendant." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997). Jurisdiction over a non-resident defendant may be based upon a federal statute or a state long-arm statute. If a basis exists for exercising jurisdiction, we "then determine whether the exercise of jurisdiction comports with due process." *Id.*

We have held that there is a potential statutory basis for personal jurisdiction under RICO because the statute provides for nationwide service of process. *Id.*; *see* 18 U.S.C. § 1965(d). The Sherman Act, by contrast, does not have a nationwide service-of-process provision, so we must look to the state long-arm statute as a basis for exercising jurisdiction. *See Delong Equip. Co. v. Washington*

*Mills Abrasive Co.*, 840 F.2d 843, 847-48 (11th Cir. 1988). For that reason, the personal-jurisdiction analysis differs for each type of claim. We address the RICO claims first.

*1.    RICO Claims*

Despite the fact that RICO contains a nationwide service-of-process provision, Courboin is entitled to take advantage of it only if his "asserted federal claim is not wholly immaterial or insubstantial." *Republic of Panama*, 119 F.3d at 941-42 (stating that, under RICO and other statutes with nationwide service-of-process provisions, a court "should dismiss for lack of jurisdiction only if the right claimed is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as not to involve a federal controversy" (internal quotation marks omitted)). In other words, whether a basis exists for exercising personal jurisdiction under RICO depends on whether Courboin has stated a "colorable" RICO claim. *Id.* at 942. If Courboin has not stated a colorable claim, we do not address the applicable due-process requirements.

The federal civil RICO provision "permits any person injured in his business or property by reasons of a violation of RICO's criminal provisions to recover treble damages and attorney's fees." *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 751 (11th Cir. 2000) (brackets and internal quotation marks omitted); *see* 18 U.S.C. § 1964(c). In order to establish a RICO violation, a plaintiff must prove

four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006) (quotation marks omitted); *see* 18 U.S.C. § 1962.

In his complaint, Courboin alleged the following: (1) his ex-wife's attorney, Scott, hired a business appraiser, Barson, who charged an exorbitant rate; (2) Scott hired a real-estate appraiser, Smith, who used an outdated form, charged 60% more than Courboin's appraiser, and did not advertise in the phonebook; (3) Courboin's attorney, Jensen, refused to cross-examine Barson on the amount of his fees, ostensibly for the tactical reason of not gaining the judge's ire; (4) Scott sent Courboin burdensome discovery requests not needed for the divorce proceeding, which Jensen charged an excessive amount to respond to and failed to challenge; (5) over $200,000 went to pay attorneys and experts in his divorce proceedings; and (6) an appraiser not affiliated with his divorce has indicated that unnamed attorneys demand a 50% cut when they send an appraisal referral.

Upon review of Courboin's complaint, we conclude that he has not stated a colorable federal RICO claim, so he may not rely on RICO's nationwide service-of-process provision. *See Republic of Panama*, 119 F.3d at 941-42.   First, assuming that the conduct alleged on the part of the defendants in this case was highly unethical, Courboin still has not identified any predicate acts that could constitute "racketeering activity" under RICO.  The phrase "racketeering activity"

7

is defined as including any predicate act which is indictable under a lengthy list of federal criminal offenses, including robbery and mail and wire fraud, as well as certain limited state offenses. 18 U.S.C. § 1961(1). A "pattern" of such activity is two or more related predicate acts. *Williams*, 465 F.3d at 1283.

While Courboin makes broad allegations of corruption and theft in the New Jersey family courts, he does not connect these allegations to any predicate act as defined by 18 U.S.C. § 1961. Nor does our review of that provision indicate any qualifying predicate act that is implicated by Courboin's specific factual allegations. *See id.* § 1961(1)(A)-(B). The closest match we can find appears to be federal wire or mail fraud, but Courboin alleges no mailings and no signals transmitted interstate by wire, as required by 18 U.S.C. §§ 1341 and 1343, respectively. Robbery under New Jersey law does not work because, among other reasons, Courboin has made no allegations of "intimidating or assaultive conduct." *State v. Lopez*, 900 A.2d 779, 784 (N.J. 2006). No other qualifying predicate acts appear even conceivably to be implicated. Thus, Courboin has not shown any "racketeering activity," let alone a "pattern" of such activity.

Courboin also did not allege any facts plausibly supporting an inference that the defendants "conduct[ed] . . . an enterprise." To show "conduct of an enterprise," a plaintiff must establish that a group of persons associated together

8

for the common purpose of engaging in an ongoing course of criminal conduct. *Williams*, 465 F.3d at 1283-84.

While Courboin asserts that the defendants' goal was to steal money, at most, his allegations support a claim that (1) Barson and Smith overbilled his wife, (2) Courboin disagreed with Jensen's tactical choices, and (3) Scott and Jensen performed work that Courboin thought was unnecessary to Courboin's divorce. The mere fact that attorneys and appraisers interact in divorce proceedings, however, does not mean or even plausibly suggest, in and of itself, that all of the defendants were in cahoots and were conducting an "enterprise." Moreover, even if some attorneys generally demand a "cut" of appraisal fees, Courboin has not stated any factual allegations indicating that any attorneys in this case did so. While we are certainly troubled by Courboin's allegations of unethical behavior on the part of the defendants in this case, the allegations simply do not support a colorable claim that an enterprise engaged in a pattern of racketeering activity in this case. *See* 18 U.S.C. § 1961(1).

Consequently, we conclude that Courboin's allegations under RICO do not rise to the level of a colorable federal controversy. *See Republic of Panama*, 119 F.3d at 941-42. Courboin cannot, therefore, take advantage of the nationwide service-of-process provision in RICO as a basis for exercising personal jurisdiction over the defendants. *Id.*

9

*2.     Sherman Act Claims*

Because the Sherman Act does not contain a nationwide service-of-process provision, we look to the long-arm statute of Florida to determine whether it authorizes exercising jurisdiction over the defendants.[2] *See Delong Equip. Co*, 840 F.2d at 847-48; Fed. R. Civ. P. 4(e).  Under the Florida long-arm statute, specific personal jurisdiction exists if, among other things, the defendant injures persons within Florida due to an act or omission outside Florida if, at the time of injury, (1) the defendant was engaged in solicitation or service activities within Florida or (2) his services were used within Florida in the ordinary course of business.  Fla. Stat. § 48.193(1)(a)6.  The statute also provides for general jurisdiction over a defendant "who is engaged in substantial and not isolated activity" in Florida.  *Id.* § 48.193(2).    Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a)6.  *See Aetna Life & Cas. Co. v. Therm-O-Disc, Inc.*, 511 So. 2d 992, 994 (Fla. 1987) (concerning Fla. Stat. § 48.193(1)(f), which later became § 48.193(1)(a)6).

When a state long-arm statute provides the basis for jurisdiction, the exercise of jurisdiction must comport with due-process requirements under the Fourteenth

---

[2]  To the extent that Courboin also alleged claims under the Florida RICO Act, *see* Fla. Stat. § 772.101, the analysis of personal jurisdiction for such claims would also be addressed under the Florida long-arm statute and is therefore the same as for the Sherman Act claims.

Amendment.[3]  *Madara*, 916 F.3d at 1514.  In essence, jurisdiction is proper only "where the defendant's contacts with the forum proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state," such that the defendant "should reasonably anticipate being haled into court there." *Id.* at 1516-17 (emphasis in original) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 105 S. Ct. 2174, 2182-83 (1985)).  Therefore, "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."  *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40 (1958)).

The district court did not have a basis for exercising jurisdiction over the moving defendants pursuant to the Florida long-arm statute.  The Scott defendants presented uncontroverted testimony that they did not solicit or conduct business in Florida.  Moreover, Courboin alleged only economic injury and did not contend that the Scott or Smith defendants solicited or conducted business in Florida.  *See* Fla. Stat. § 48.193(1)(a)6; *Aetna Life & Cas. Co.*, 511 So. 2d at 994.  In any case, the district court's exercise of jurisdiction over these defendants would not comport with Fourteenth Amendment due-process requirements.  *See Madara*, 916 F.3d at 1514.  The defendants had no "substantial connection" with Florida either

---

[3]  By contrast, when a federal statute like RICO provides the basis for personal jurisdiction, the exercise of jurisdiction must comport with due-process requirements under the Fifth Amendment.  *Republic of Panama*, 119 F.3d at 942.  While similar, the due-process protections offered by the respective amendments are not identical.  *See id.* at 944-46.

through the conduct out of which Courboin's complaint arose or more generally. *See id.* at 1516-17. Further, Courboin's unilateral decision to move to Florida during the divorce proceedings was insufficient to create jurisdiction. *See id.* at 1516.

### 3.    *Non-Moving Defendants*

For the same reasons discussed above, the district court also did not err in dismissing Courboin's complaint based on its lack of personal jurisdiction over the non-moving defendants. A district court may on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related. *Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.*, 817 F.2d 1533, 1537 (11th Cir. 1987); *see Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (stating that a district court can dismiss an action on its own motion only if it does so fairly, usually by providing notice and an opportunity to respond, but noting an exception to this rule where reversal would be futile).

Here, the non-moving defendants were similarly situated to the moving defendants, as all acts or omissions alleged in the complaint occurred in New Jersey during Courboin's divorce proceedings. *See Loman Dev. Co.*, 817 F.2d at 1537. Any potential unfairness of the district court's dismissal was eliminated by

Courboin's opportunity to respond to the jurisdictional issues raised by the Scott and Smith defendants' motion to dismiss. *See id.* Furthermore, Courboin made no jurisdictional allegations as to any of the defendants, and apart from citing to RICO's nationwide service-of-process provision, makes no jurisdictional argument under Florida law on appeal. Thus, reversal as to these defendants would be futile. *See Tazoe*, 631 F.3d at 1336. Accordingly, we affirm the part of the district court's order dismissing the complaint for lack of personal jurisdiction over all defendants.

**B.**

Although the district court correctly concluded that it lacked personal jurisdiction over all defendants, the court addressed the merits of Courboin's claims. We understand and appreciate the district court's motivation to address the merits of the claims in the alternative. Nevertheless, "a defendant that is not subject to the jurisdiction of the court cannot be bound by its rulings," so jurisdictional questions generally should be decided before reaching the merits. *See Republic of Panama*, 119 F.3d at 940; *Madara*, 916 F.2d at 1514 & 1514 n.1. Moreover, where no personal jurisdiction exists and a dismissal on the merits would be with prejudice, it is particularly appropriate to dismiss on jurisdictional grounds and not address the merits. *Republic of Panama*, 119 F.3d at 940; *Madara*, 916 F.2d at 1514 & 1514 n.1. For these reasons and because we find no personal jurisdiction over the defendants in this case, we vacate the portion of the

14

district court's order dismissing the complaint with prejudice for failure to state a claim and for frivolity.

## IV.

In sum, we affirm the district court's dismissal of Courboin's complaint without prejudice for lack of personal jurisdiction over the defendants, and we vacate the part of the district court's order that dismissed the complaint with prejudice for failure to state a claim.

**AFFIRMED IN PART, VACATED IN PART.**